No. 96,580

In the Matter of LINDA L. ECKELMAN, *Respondent.*

144 P.3d 713

Opinion filed October 27, 2006.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*John J. Ambrosio,* of Topeka, argued the cause for the respondent, and *Linda L. Eckelman,* respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Linda L. Eckelman, of Dodge City, an attorney admitted to the practice of law in Kansas.

A disciplinary panel of the Kansas Board for Discipline of Attorneys conducted a formal hearing, as required by Kansas Supreme Court Rule 211 (2005 Kan. Ct. R. Annot. 287). The panel found that Eckelman violated KRPC 3.5 (2005 Kan. Ct. R. Annot. 471) (impartiality and decorum of the tribunal) and KRPC 8.2 (2005 Kan. Ct. R. Annot. 502) (judicial and legal officials). The panel unanimously recommended that Eckelman receive published censure.

Eckelman did not file exceptions to the hearing panel's report.

Hearing Panel's Findings of Fact

The hearing panel, based upon clear and convincing evidence, made findings of fact which we summarize as follows:

From November 3 through 5, 2004, the Honorable Van Z. Hampton presided over a criminal jury trial in the Ford County District Court. The respondent represented the defendant.

During the morning hours of the trial on November 4, 2004, the victim in the case testified. Following her testimony, the court called a morning recess. During the recess, Judge Hampton and the respondent remained in the courtroom. Also during the recess, some of the female jurors went into a bathroom and the victim went into the bathroom. The defendant's wife observed this and

reported to the respondent that some jurors and the victim in the case were in the bathroom at the same time and they may have had a conversation with each other.

The respondent informed Judge Hampton of the alleged contact by the victim with the jurors. The respondent advised the judge that she felt that a mistrial should be declared. Judge Hampton left the courtroom, asked the bailiff to gather the jurors, and then returned to his chambers.

The respondent left the courtroom, went to the bathroom, and observed the victim and some jurors in the bathroom. She did not observe or hear any conversation between the jurors and the victim. She spoke to the court reporter, informing the court reporter that the court was going to grant a mistrial because jurors had been talking to the victim in the bathroom. The respondent was upset and wanted to know why the jurors were wandering around the courthouse. During the conversation, the respondent used profanity.

At the conclusion of the conversation, the court reporter also went into the judge's chambers. The respondent soon followed. The respondent was upset and angry. Present in chambers at that time were Judge Hampton, a district magistrate judge, the bailiff, the court reporter, and a court secretary. Neither the prosecutor in the case nor anyone on his behalf was present in chambers at the time the respondent was present.

The respondent told Judge Hampton that he must declare a mistrial. Judge Hampton reasoned that first, the jurors needed to be interviewed to determine whether there was cause for a mistrial. The respondent's tone escalated, she repeatedly stated that the situation was "bullshit," and she demanded that Judge Hampton declare a mistrial. Judge Hampton again informed the respondent that before he would declare a mistrial, he must first interview the jurors. The respondent became visibly angry and expressed in a loud voice that Judge Hampton would not grant a mistrial for a defendant if the defendant "ate shit." Judge Hampton told the respondent to calm down or he would hold her in contempt. The respondent told Judge Hampton to go ahead and cite her in con-

tempt. Judge Hampton cited the respondent in direct contempt and ordered her to pay a $100 fine.

After the events in chambers, the trial reconvened. At that time, Judge Hampton, the prosecutor, the respondent, her client, and the jury returned to the courtroom. Because the respondent intended to make an oral motion, the jury was excused again. The respondent orally requested that she be allowed to withdraw from the case, as follows:

"THE COURT: . . . Let the record show we're in chambers. Mr. Koon is here. Mrs. Eckelman is here with the Defendant, and we're here for a motion.

"MRS. ECKELMAN: Your Honor, at this time, I'd move to withdraw as counsel on this case. Reason being is I feel that judge is prejudiced against me. I think you are prejudiced against my client. We have just had a conversation in chambers where you fined me a hundred dollars for contempt because I disagree with you wholly, and I was swearing about a mistrial on this case.

"I cannot go forward. I'm extremely upset by your actions, and I cannot perform in front of a jury today. I wish to be excused. It will highly prejudice my client if I remain.

"THE COURT: I think we may be able to take a recess and everyone can regroup.

"MRS. ECKELMAN: Recess won't work. I am furious, and I can't control it, and you're the cause of it. You started out the morning that was about the interpretation, getting nasty with me, and I'm not gonna put up with it from you ever again.

"THE COURT: . . . And, I think, probably, what we should do is take a recess. We'll have the jury come back at 1:30, attorneys come back at 1:15, and we'll address it at that time.

"MRS. ECKELMAN: I will not serve as his counsel, Your Honor.

"THE COURT: I'm directing you to come back at 1:15, and we'll address it then.

"MRS. ECKELMAN: I won't be here. Come on, Rudy."

The respondent returned to court as directed at 1:15 p.m. At that time, the respondent made an oral motion for a mistrial. During her remarks, the respondent accused Judge Hampton of talking to the jurors out of the presence of the attorneys. She again accused Judge Hampton of being prejudiced against her and her client. Judge Hampton denied speaking to the jurors about any substantive matter and denied her motion.

On November 5, 2004, Judge Hampton summarized the events of the day before and allowed the respondent to provide infor-

mation in mitigation to the citation of direct contempt. The respondent again accused Judge Hampton of speaking to the jurors improperly. She further argued that his actions constituted reversible error. Again, Judge Hampton denied speaking to the jurors improperly, found that she failed to introduce any evidence in mitigation, and upheld his citation of direct contempt. Thereafter, Judge Hampton issued his findings and order of contempt.

The respondent then moved for a directed verdict, judgment of acquittal, mistrial, or dismissal, in part arguing that Judge Hampton spoke to the jurors improperly. The court denied the respondent's motions. The trial proceeded, and the defendant was acquitted of the charges.

Judge Hampton filed a complaint with the Disciplinary Administrator's office which resulted in the Disciplinary Administrator filing a formal complaint against the respondent. In her response to the complaint, the respondent generally admitted the contents of the formal complaint. At the hearing on the formal complaint, with the exception of one sentence, the respondent stipulated to all of the allegations in the formal complaint.

### Hearing Panel's Conclusions of Law

The hearing panel, in its conclusions of law, noted that the Kansas Rules of Professional Conduct regulate and limit a lawyer's First Amendment freedom of speech. See *In re Johnson*, 240 Kan. 334, 335, 729 P.2d 1175 (1986); *In re Wilkinson*, 251 Kan. 546, 555, 834 P.2d 1356 (1992); KRPC 3.5 (2005 Kan. Ct. R. Annot. 471). The panel quoted KRPC 3.5 which provides, in pertinent part:

"A lawyer shall not:

. . . .

"(c)   communicate or cause another to communicate as to the merits of a cause with a judge or official before whom an adversary proceeding is pending except:
(1)   in the course of official proceedings in the cause;
(2)   in writing, if the lawyer promptly delivers a copy of the writing to opposing counsel or to the adverse party if unrepresented;
(3)   orally upon adequate notice to opposing counsel or the adverse party if unrepresented;
(4)   as otherwise authorized by law or court rule;
"(d)   engage in undignified or discourteous conduct degrading to a tribunal." (2005 Kan. Ct. R. Annot. 471-72).

Based upon the respondent's stipulation, the hearing panel concluded that the respondent violated KRPC 3.5(c) when she discussed the merits of declaring a mistrial in the case with Judge Hampton in his chambers on November 4, 2004, without first providing notice to the prosecutor.

Additionally, the hearing panel concluded that the respondent engaged in undignified and discourteous conduct that was degrading to the tribunal and violated KRPC 3.5(d).

Finally, the hearing panel concluded the respondent violated KRPC 8.2(a), which provides:

"A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." (2005 Kan. Ct. R. Annot. 502).

The panel stated: "In this case, 'with reckless disregard as to its truth or falsity,' the Respondent made false statements regarding Judge Hampton. During the trial, the Respondent repeatedly accused Judge Hampton of speaking improperly with the jurors. The Respondent should have known that her statements were false."

After finding these violations, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter "Standards"). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

The hearing panel found the respondent violated her duty to the legal system and the legal profession, the violation was made knowingly, and the respondent caused potential injury to the legal system and the legal profession. The panel then considered aggravating circumstances, which are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel found the following aggravating factors present:

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1982. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of

22 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time she engaged in the misconduct."

The panel also considered mitigating circumstances, in other words, any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Absence of a Dishonest or Selfish Motive. Dishonesty and selfishness were not motivating factors in this case.

"Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct. At the time of the misconduct, the Respondent was suffering from diabetes, depression, and significant stress. Additionally, the Respondent's diabetes was not under control. Since the misconduct, the Respondent has been able to get her diabetes under control and has made significant progress in the treatment of her depression.

"Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct. In this case, the Respondent paid the direct contempt fine and dismissed the appeal. Those actions are some evidence that the Respondent attempted to rectify the consequences of her misconduct.

"The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions. The Respondent fully cooperated in the disciplinary process as exhibited by her acknowledgment of the misconduct.

"Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney. The Respondent is an active and productive member of the bar in Dodge City, Kansas. She enjoys the respect of her peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"Physical Disability. At the time of the misconduct, the Respondent was suffering from diabetes, depression, and significant stress. According to Dr. Albott's report:

'The incident which led to a formal complaint being filed appears to have been preceded by a number of events and circumstances that confluenced and prompted an episode of inappropriate behavior. The most critical factor which, in my professional opinion, played a major role was the diabetic condition which at the time of the incident was not under control.'

Since that time, the Respondent has made great strides to get her diabetes and depression under control. Additionally, the Respondent has changed her circumstances to reduce the stress she experiences and is also now better able to handle the stress of practicing law.

"Remorse. It appears as though the Respondent has a difficult time showing remorse. However, by her actions, the Hearing Panel inferred that she feels remorse for her misconduct."

After consideration of these aggravating and mitigating factors, the hearing panel considered the ABA Standards for when reprimand is appropriate. Standard 6.13 provides:

"Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and cause injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

Finding that these standards applied, the hearing panel unanimously concluded that published reprimand was the appropriate sanction.

### Analysis of the Panel's Findings, Conclusions, and Recommendation

To warrant a finding of misconduct, the charges must be established by clear and convincing evidence. Supreme Court Rule 211(f) (2005 Kan. Ct. R. Annot. 287). When a respondent does not file exceptions to the hearing panel's report, the report is deemed admitted under Rule 212(c) and (d) (2005 Kan. Ct. R. Annot. 297). In this case, respondent filed no exceptions to the panel's report.

We conclude there is clear and convincing evidence that the respondent violated KRPC 3.5(c) and (d) and 8.2(a). As we have previously stated:

"A lawyer, as a citizen, has a right to criticize a judge or other adjudicatory officer publicly. To exercise this right, the lawyer must be certain of the merit of the complaint, use appropriate language, and avoid petty criticisms. Unrestrained and intemperate statements against a judge or adjudicatory officer lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified."

*Johnson,* 240 Kan. at 336. The respondent's comments in this case crossed the line of justified criticism; some were made ex parte and were made with reckless disregard as to the truth of the statements. Consequently, we fully agree with and adopt the hearing panel's conclusions of law.

The court unanimously agrees with the hearing panel's recommendation of published censure.

IT IS THEREFORE ORDERED that respondent, Linda L. Eckelman, be and she is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2005 Kan. Ct. R. Annot. 247) for her violations of KRPC 3.5 and KRPC 8.2.

IT IS FURTHER ORDERED that the costs of the proceeding be assessed to the respondent and that this order be published in the official Kansas Reports.