IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,956

In the Matter of JACK R.T. JORDAN,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed October 21, 2022. Disbarment.

*Alice L. Walker*, Deputy Disciplinary Administrator, argued the cause, and *Julia A. Hart*, Deputy Disciplinary Administrator, and *Gayle B. Larkin*, Disciplinary Administrator, were with her on the brief for petitioner.

*Jack R.T. Jordan*, respondent, argued the cause and was on the briefs pro se.

PER CURIAM:  This is a contested attorney discipline proceeding against Jack R.T. Jordan, of North Kansas City, Missouri, who was admitted to practice law in Kansas in 2019. A panel of the Kansas Board for Discipline of Attorneys concluded Jordan violated the Kansas Rules of Professional Conduct during federal court proceedings initiated to obtain a document known as the "Powers e-mail" under the federal Freedom of Information Act, 5 U.S.C. § 552 (2018). Across various pleadings, Jordan persistently accused multiple federal judges of lying about that e-mail's contents, lying about the law, and committing crimes including conspiring with others to conceal the document.

The panel unanimously found Jordan's conduct violated KRPC 3.1 (frivolous claims and contentions) (2022 Kan. S. Ct. R. at 390); 3.4(c) (disobeying obligations under tribunal rules) (2022 Kan. S. Ct. R. at 395); 8.2(a) (making false or reckless statement regarding qualifications or integrity of a judge) (2022 Kan. S. Ct. R. at 432);

1

8.4(d) (conduct prejudicial to the administration of justice) (2022 Kan. S. Ct. R. at 434); and 8.4(g) (conduct adversely reflecting on lawyer's fitness to practice law) (2022 Kan. S. Ct. R. at 434). The panel recommends disbarment, and the Disciplinary Administrator's office agrees. Jordan filed exceptions to the panel's report and argues discipline cannot be imposed because the First Amendment to the United States Constitution protects his statements. He also claims his assertions have not been proven false.

We hold clear and convincing evidence establishes Jordan's violations of KRPC 3.1, 3.4(c), 8.2(a), and 8.4(d) and (g). And based on that, we disbar him from practicing law in this state.

PROCEDURAL BACKGROUND

The Disciplinary Administrator filed a formal complaint alleging various KRPC violations against Jordan on August 27, 2021. He answered on September 16, 2021. The panel conducted a one-day hearing on January 12, 2022. Respondent appeared pro se. The Disciplinary Administrator called Jordan and its investigator W. Thomas Stratton Jr. as witnesses. Jordan repeatedly invoked the Fifth Amendment when asked about his conduct. Stratton's testimony established that Jordan had previously admitted he carefully considered his actions, and that Jordan did not supply any evidence he had ever viewed the Powers e-mail before accusing federal judges of lying about its contents. The panel issued an 87-page report that provides in relevant part:

*"Findings of Fact*

"42.    The hearing panel finds the following facts, by clear and convincing evidence:

2

<u>"Administrative Proceedings and Lawsuit in District of Columbia</u>

"43.     The respondent's wife, M.J., was injured at the U.S. Consulate in Erbil, Iraq. The respondent represented M.J. in an action under the Defense Base Act.

"44.     During administrative proceedings, the respondent sought production of an email that the respondent referred to as 'Powers' email'.

"45.     Administrative Law Judge Merck denied production of an unredacted version of Powers' email to the respondent based on attorney-client privileged information within the email.

"46.     The respondent filed interlocutory appeals and requests for reconsideration of Administrative Law Judge Merck's decision regarding Powers' email.

"47.     The respondent submitted a Freedom of Information Act ('FOIA') request to the U.S. Department of Labor ('DOL') for certain documents, including Powers' email, which was denied.

"48.     On September 19, 2016, the respondent filed a lawsuit against the DOL, *Jordan v. United States Department of Labor*, 17-cv-02702 (U.S. District Court, District of Columbia, September 19, 2016).

"49.     This matter was assigned to the Honorable Judge Rudolph Contreras, District Court Judge for the U.S. District Court for the District of Columbia.

"50.     Judge Contreras reviewed Powers' email *in camera*.

"51.     After Judge Contreras conducted an *in camera* review of Powers' email, he ruled that the email was protected by attorney-client privilege.

"52.     Judge Contreras' decision was affirmed on appeal to the D.C. Circuit Court of Appeals.

<u>"Jordan v. U.S. Department of Labor (18-cv-6129) in Western District of Missouri</u>

"53.     On August 29, 2018, the respondent filed a lawsuit *pro se* on his own behalf, *Jordan v. U.S. Department of Labor*, 18-cv-6129, challenging the denial of FOIA requests for Powers' email in the United States District Court for the Western District of Missouri.

"54.     The Honorable Judge Ortrie Smith, District Court Judge for the Western District of Missouri, presided over this matter.

"55.     The DOL filed a motion to dismiss a portion of the respondent's complaint relating to Powers' email.

"56.     Judge Smith granted the DOL's motion to dismiss relating to Powers' email.

"57.     On April 9, 2019, the respondent appealed the matter to the Eighth Circuit Court of Appeals.

"58.     On February 21, 2020, the Eighth Circuit Court of Appeals affirmed the judgment of the District Court.

<u>"[F.T.] v. U.S. Department of Labor (19-cv-00493) in Western District of Missouri</u>

"59.     On June 26, 2019, F.T. filed a lawsuit against the DOL in the District Court for the Western District of Missouri, *[F.T.] v. U.S. Department of Labor*, 19-cv-00493, seeking a court order that the DOL release Powers' email. F.T. filed this suit after having filed FOIA requests for certain documents, including Powers' email.

"60.     The Honorable Judge Ortrie Smith presided over this matter.

4

"61.     On July 25, 2019, Judge Smith issued an order staying the matter pending the Eighth Circuit Court of Appeals' resolution of the appeal in *Jordan v. U.S. Department of Labor*, 18-cv-6129.

"62.     On October 17, 2019, the respondent entered his appearance to represent F.T. in [*F.T.*] *v. U.S. Department of Labor*, 19-cv-00493. F.T.'s former attorneys were granted leave to withdraw the next week. At the time of the former attorneys' withdrawal, the respondent was F.T.'s only attorney.

"63.     On November 19, 2019, the respondent filed a document titled, 'Plaintiff's Suggestions Supporting Motion to Remedy Judge Smith's Lies and Crimes and Lift the Stay or Disqualify Judge Smith'.

"64.     Within that filing, the respondent wrote headlines that included, in part, the following statements:

- 'Judge Smith Is Knowingly and Willfully Violating Federal Law and the Constitution',

- 'Judge Smith Is Knowingly and Willfully Abusing Any Potential Discretion',

- 'Judge Smith Is Knowingly and Willfully (Criminally) Failing to Comply with the APA and Clear and Controlling Supreme Court Precedent',

- 'Judge Smith Is Committing Crimes and Helping Ray and other DOL and DOJ Employees Commit Crimes', and

- 'Judge Smith Must Be Disqualified If He Fails to Promptly Remedy His Knowing and Willful Violations of the Constitution and Federal Law'.

([T]he respondent acknowledged during his testimony that what is stated in public court filings filed by him was indeed written by him. . . .)

"65. The respondent wrote in the body of that filing further statements about Judge Smith, including:

'Plaintiff, [F.T.], respectfully requests that the Court very promptly remedy each knowing and willful falsehood ("Lie") and violation of the Constitution or federal law and crime by Judge Smith below or promptly disqualify Judge Smith for the following reasons.

* * *

'To demonstrate how truly exceptional Judge Smith's conduct and contentions are, Plaintiff shows below that each such contention was a Lie, and Judge Smith is violating his oaths of office and the Constitution and committing crimes, specifically, to help DOL and DOJ employees violate their oaths and the Constitution and commit crimes.

* * *

'For the foregoing reasons, Judge Smith's mere contention that he (secretly and silently) "already considered" every issue and legal authority presented by Plaintiff is irrelevant and wholly inadequate. It also necessarily is either a Lie or a confession to a crime. It certainly could be both. If he "considered" such authorities, he necessarily knew that he never had any power to knowingly violate or disregard any provision of the Constitution or federal law to deny Plaintiff any constitutional or statutory right. He swore or affirmed he would not engage in such egregious misconduct. Neither Judge Smith nor the DOL or DOJ ever even contended that he had any such power under any circumstances. He merely pretends to have such power. Such pretense has been wholly unjustified, and it cannot be justified. It

6

is a violation of federal law; it is a violation of Judge Smith's oaths of office; it is criminal; and it is "treason to the Constitution."

* * *

'Judge Smith's contentions and conduct for years in Jordan and in this case demonstrate that his primary goal is to knowingly violate and help the DOL and DOJ knowingly violate federal law to conceal evidence that DOL and DOJ employees asserted Lies (in a DOL adjudication or to the D.C. District Court or D.C. Circuit Court) when they purported to quote a privilege notation or they represented that Powers' email contains an express or explicit request for legal advice. Judge Smith's actions (and refusals to act) are so inimical to our entire systems of government and law that they are criminal.

* * *

'Judge Smith committed criminal conspiracy: he and DOJ [*sic*] and DOJ employees "joined in" an "understanding," and each "knew the purpose" was to deprive Plaintiff or Jordan of clearly-established constitutional and statutory rights.

* * *

'Judge Smith implied that he had "broad discretion" and "inherent power" to violate or disregard clear plain language of the Constitution, federal law, and Supreme Court precedent. But Judge Smith's vague references to whatever "discretion" or "inherent power" he might have were irrelevant and illusory. They were blatantly deceitful declarations of his intent to defraud. Judge Smith has openly declared his intent to decide

7

this case fraudulently, just as he "decided" Jordan fraudulently. A judge who pretends to have "broad discretion" and "inherent power" to violate or disregard clear plain language of the Constitution, federal law, and Supreme Court precedent must be disqualified.'

"66.    On January 8, 2020, Judge Smith issued an order denying the relief sought in the respondent's filing.

"67.    On January 8, 2020, Judge Smith also issued a separate order titled 'Order Directing Plaintiff and Plaintiff's Counsel to Show Cause'.

"68.    Within the January 8, 2020, Order Directing Plaintiff and Plaintiff's Counsel to Show Cause, Judge Smith ordered that 'Plaintiff and her counsel must show cause why either or both should not be held in contempt' and directed the Clerk of the District Court to 'randomly assign this matter to another Article III judge for the limited purposes of conducting a show cause proceeding and issuing any order resulting therefrom.'

"69.    Judge Smith further ordered that 'neither Plaintiff nor her counsel shall file a motion or other filing responsive to this Order in this Court.'

"70.    Judge Smith further ordered that 'Plaintiff and her counsel shall await further instruction from the judge assigned to conduct the show cause proceeding and issue any order resulting therefrom.'

"71.    On January 13, 2020, the Honorable Chief Judge Beth Phillips of the District Court for the Western District of Missouri issued an order in [*F.T.*] *v. U.S. Department of Labor* (19-cv-00493) wherein Chief Judge Phillips ruled that the respondent's motion 'accuses Judge Smith of engaging in intentional wrongdoing: knowingly issuing unlawful orders, conspiring with Defendant's counsel, lying, and committing crimes' and that the 'Filing does not support these accusations with any facts beyond Jordan's and [F.T.'s] disagreement with the Stay Order.' Chief Judge Phillips

8

directed the respondent and F.T. 'to respond as detailed in this Order and show cause why they should not be held in contempt or sanctioned.'

"72.    Specifically, Chief Judge Phillips' January 13, 2020, Order required the respondent and F.T. to 'show cause why they should not be sanctioned for violating Rule 11(b)(3),' and to 'show cause why [Missouri's Rules of Professional Responsibility 4-8.2(a), 4-3.3(a)(1), 4-8.4(c), and 4-8.4(d), contained in Local Rule 83.6(c)(1)] have not been violated and why sanctions are not appropriate.'

"73.    Chief Judge Phillips' January 13, 2020, Order included 'Attachment A,' which contained specific statements from the respondent's November 19, 2019, filing that the respondent and F.T. were to address and show cause why they should not be held in contempt and sanctioned.

"74.    On February 18, 2020, the respondent filed an 'Answer to Show Cause Order Regarding Contentions That Judge Smith Asserted Lies and Committed Crimes' in [*F.T.*] *v. U.S. Department of Labor* (19-cv-00493).

"75.    Attached to the filing were documents titled: 'Supplement A: Analysis of Crimes and Lies By Judge Smith and Jeffrey Ray,' 'Supplement B: Analysis of FOIA and Related Legal Authorities That Judge Smith Is Evading by Staying Cases Pertaining to Powers' Email,' and 'Declaration of Jack Jordan'.

"76.    Within the Answer to Show Cause Order, the respondent wrote headlines that included, in part, the following statements:

- 'Judge Smith Clearly Illegally Targeted and Threatened [F.T.]',

- 'Regarding Jordan, Judge Phillips Illegally Refused to Comply with Federal Law and Failed to Even Acknowledge the Constitution or Controlling Law',

- 'Judge Phillips Had No Power to Change, Contradict, Disregard or Violate FRCP 83, Local Rule 83.6 or FRCP 53', and

9

• 'An Investigation Was Required But Judge Phillips Blocked Respondents' Access to Relevant Evidence'.

"77.     The respondent argued in the Answer to Show Cause Order that the respondent and F.T. should not be sanctioned or held in contempt because Chief Judge Phillips' Show Cause Order and other related orders denied the respondent and F.T. due process.

"78.     The respondent wrote in the body of that filing further statements about Judge Smith and Chief Judge Phillips, including:

> 'If Judge Phillips believes that [the November 19, 2019, "Plaintiff's Suggestions Supporting Motion to Remedy Judge Smith's Lies and Crimes and Lift the Stay or Disqualify Judge Smith"] was "intended to harass," she *must* believe that Judge Smith's order was intended to harass. Judge Smith's actions seemed designed to illegally intimidate [F.T.]—as [F.T.] already had addressed in detail even before Judge Smith issued his order to cause [*sic*] the issuance of the [Show Cause Order]. Such intimidation and threats were criminal.

> * * *

> 'Jordan also relied on the plain language of federal law, the U.S. Constitution, and Supreme Court precedent. In contrast, Judge Smith relied on mere indirection and misdirection, including pretenses that statements in Eighth Circuit opinions—which did not (and did not even purport to) address the legal issues and legal authorities presented by Jordan—could somehow change or contradict or justify disregarding or violating the plain language of federal law, the U.S. Constitution, and Supreme Court precedent that Jordan presented. As addressed in [the

10

respondent's November 19, 2019 Suggestions Supporting Motion] and herein (including Supplements A and B hereto), Judge Smith's pretenses were so blatantly illegal that they were absurd. They were criminal.

* * *

'Even with respect to Jordan, alone, the *issuance of the* [*Show Cause Order*]—and the issuance of Judge Smith's order causing the issuance of the [Show Cause Order]—were patently illegal.

* * *

'Even before that, Judge Phillips did not even *contend* that the *issuance of either the* [*Show Cause Order*] or *Judge Smith's order* was legal. Judge Phillips did not even *contend* that the *issuance of either the* [*Show Cause Order*] or *Judge Smith's order* was consistent with (and did not deny Jordan the due process required in) FRCP 83, Local Rule 83.6, FRCP 53 or the Constitution. Instead, Judge Phillips asserted two irrelevant issues and one contention that clearly was false.

* * *

'As a condition of employment, every federal judge and agency employee must swear or affirm that he or she will at all times "support and defend the Constitution" against "*all* enemies," including "*domestic*" enemies. Among the most insidious domestic enemies of the constitution is a federal judge or a DOJ attorney, who—like Judge Smith, Judge Contreras and Ray have in cases regarding Powers' email—used his position and authority to attack and undermine (1) federal law and the Constitution and (2) citizens (like [F.T.] and Jordan) who are

11

attempting to support and defend the Constitution. Such a judge
or DOJ attorney is the equivalent of the inside man in a bank
heist. He *said* he would protect; he wears the *uniform* of a person
employed to protect; and he *pretends* to protect. But, in fact, he
*facilitates crimes* against the very institutions he pretends to
protect.

[* * *]

'"Crime is contagious. If the government becomes a lawbreaker,
it breeds contempt for law; it invites every man to become a law
unto himself; it invites anarchy." The efforts of multiple DOL
attorneys and ALJs and multiple DOJ attorneys and federal
judges to conceal evidence at issue in this case is evidence that
crime is particularly contagious and insidious when DOJ
attorneys and federal judges conspire to commit them.

[* * *]

'Judge Phillips also is undermining the institutions she swore to
protect. A judge's decisions failing to apply the standard
enunciated in federal law are an "evil" that "spreads in both
directions," avoiding "consistent application of the law" and
preventing "effective review of" decisions by superior "courts."

* * *

'Judge Phillips knows that her conduct was illegal and criminal.'

"79.    Supplement A to the respondent's February 18, 2020, Answer to Show
Cause Order, included a headline that stated: 'Much of the Evidence that the Conduct of
Judge Smith and Ray (and potentially Garrison) Was Criminal Is Circumstantial.'

12

Another headline stated that 'There Is Copious Evidence' that Judge Smith's conduct was "Criminal."'

"80.    Supplement A indicates the following 'Documentary Evidence of Conspiracy': 'A. DOL Requests and Judge Smith's Orders Regarding Refusing to Join [F.T.],' 'B. DOL Requests and Judge Smith's Orders Regarding Staying [(*F. T.*) *v. U.S. Department of Labor* (19-cv-00493)],' and 'C. DOJ Requests and Judge Smith's Orders Regarding Staying [(R.C.) v. U.S. Department of Justice, (19-cv-00905)]'.

"81.    Notably, in Supplement A, the respondent argued that evidence of his allegations about Judge Smith in his November 19, 2019, filing was 'circumstantial,' and was based on the respondent's assertion that Judge Smith misrepresented what was contained in Powers' email (which the respondent had not read) and also on the respondent's assertion that Judge Smith 'knew' that Judge Smith was not abiding by the respondent's interpretation of what the law required. Moreover, the respondent argued that the fact the unredacted Powers' email was not provided to him was evidence of deceit by those withholding the email from him.

"82.    In Supplement B, the respondent stated in the title of the document that Judge Smith was 'evading' legal authorities and later in the document stated that Judge Smith 'repeatedly failed or even expressly refused to apply the following law even though he knew he was bound to do so.'

"83.    In the 'Declaration of Jack Jordan,' attached to the respondent's February 18, 2020, Answer to Show Cause Order, the respondent 'declare[d] under penalty of perjury' pursuant to 28 U.S.C. § 1746, in part, that:

> '30.    In no proceeding involving me has anyone ever even identified *any* word used in any "express" or "explicit" request in Powers' email or any factor that he considered to determine that *any* request in Powers' email sought advice that was of a *legal* nature.

13

'31. [The November 19, 2019, "Plaintiff's Suggestions Supporting Motion to Remedy Judge Smith's Lies and Crimes and Lift the Stay or Disqualify Judge Smith"] was not presented for any improper purpose whatsoever. It was not presented to harass anyone, cause any unnecessary delay, or needlessly increase the cost of litigation. It was submitted for the purposes stated in FRCP 1: to secure the just, speedy, and inexpensive determination of whether the DOL violated FOIA with respect to [F.T.'s] FOIA request. My inquiry into the facts, evidence and legal authorities relevant to [the November 19, 2019, filing] in the captioned case (as well as my Answer dated February 18, 2020 to Judge Phillips' Show Cause Order related to [the November 19, 2019, filing]) included all filings in federal court or DOL proceedings and all legal authorities that were dated before November 19, 2019 that were included in my Answer. My inquiry included far more. Specifically to address falsehoods asserted, and violations of law and crimes, by DOL and DOJ attorneys, DOL judges and federal judges, before November 19, 2019, I devoted more than two years to studying and explaining to courts and DOJ adjudicators FOIA and other sections of the APA, their legislative history, federal rules of procedure and evidence, the U.S. Constitution, the Declaration of Independence of 1776, and Supreme Court precedent spanning hundreds of years.'

"84. On March 4, 2020, Chief Judge Phillips issued an order sanctioning the respondent.

"85. In the Order, Chief Judge Phillips ruled that the respondent and F.T. were afforded due process in the proceeding.

"86. Chief Judge Phillips concluded that the respondent 'violated Rule 11 of the Federal Rules of Civil Procedure, and has done so in a manner that demonstrates his contempt for the Court' and that the respondent's filing 'contains multiple statements and accusations that had no reasonable basis in fact.' Chief Judge Phillips ruled that the respondent's 'conduct qualifies under the dictionary-definition of "contempt".'

14

"87.    Chief Judge Phillips imposed a sanction on the respondent of $1,000.00, to be paid by the respondent to the Clerk of the Court.

"88.    On April 1, 2020, the respondent filed a document titled 'Notice of Noncompliance with Illegal and Criminal Order Purporting to Impose Criminal Penalties'.

"89.    In this filing, the respondent stated that he 'refuses to pay any portion of any such penalty because no valid obligation exists requiring Jordan to do so.'

"90.    The respondent also stated in this filing that 'Judge Phillips [*sic*] order to show cause and her order holding Jordan in criminal contempt were illegal and criminal.'

"91.    On May 5, 2020, the respondent filed 'Plaintiff's Motion to Reconsider and Vacate Order Imposing Sanctions and Order Refusing to Disqualify Judge Smith.'

"92.    In this filing, the respondent stated that 'Judge Smith used Judge Phillips (and Judge Phillips and Judge Smith conspired) to violate Jordan's due process rights'.

"93.    The respondent further stated that 'Judge Smith asserted Lies and committed crimes.'

"94.    The respondent also stated that Judge Smith and attorneys involved in the case 'supported and defended enemies of the Constitution to thwart and undermine the Constitution.'

"95.    On May 6, 2020, the respondent filed 'Plaintiff's Supplement to Motion to Reconsider and Vacate Order Imposing Sanctions'. This document contained statements by the respondent about Judge Phillips and Judge Smith as well as attorneys involved in the case similar to those made in his May 5, 2020, filing.

15

"96.     On May 13, 2020, the respondent filed 'Plaintiff's Second Supplement to Motion to Reconsider and Vacate Order Imposing Sanctions'. This document contained statements by the respondent about Judge Phillips and Judge Smith as well as attorneys involved in the case similar to those made in his May 5, 2020, and May 6, 2020, filings.

"97.     On June 29, 2020, the respondent filed 'Plaintiff's Corrected Motion to Reconsider and Vacate Judge Smith's Lies and Evidence of Criminal Conspiracy to Conceal Material Facts and Dispositive Evidence.' This document contained statements by the respondent about Judge Phillips and Judge Smith as well as attorneys involved in the case similar to those made in his May 5, 2020, May 6, 2020, and May 13, 2020, filings.

"98.     On June 30, 2020, Judge Smith issued an order denying the respondent's Corrected Motion to Reconsider.

"99.     In the June 30, 2020, order Judge Smith ruled as follows:

'Plaintiff's counsel has filed numerous motions in this matter, including but not limited to ten motions to reconsider (not including the motions discussed above). These motions, including the most recently filed motions, are largely frivolous, unprofessional, and scurrilous, if not defamatory, in tone and content. The Court refers Plaintiff's counsel to Judge Phillips's March 4, 2020 Order wherein Judge Phillips determined Plaintiff's counsel violated Rule 11, sanctioned him, and referred him to the Kansas Bar Association.

'Three dispositive motions are pending in this matter. Yet, Plaintiff continues to file other motions. The Court warns Plaintiff that additional frivolous motion practice will be met with additional sanctions, another referral to the Kansas Bar Association, and referrals to other jurisdictions wherein counsel is licensed to practice law. This warning should not

16

come as a surprise to Plaintiff's counsel because other courts recently issued similar warnings to counsel.'

"100.    On July 1, 2020, the respondent filed two documents in the matter. One was 'Plaintiff's Motion for Order Stating the Law and Showing Judge Smith did not Lie About the Law,' and the second was 'Plaintiff's Motion for Order Stating the Law Showing Judge Smith's Threat was not Criminal'.

"101.    Within these documents, the respondent stated, in part:

'Judge Smith is committing crimes by *personally* concealing evidence of whether or not (1) Powers' email contains either Key Phrase and (2) Clubb and Ray acted in bad faith by misrepresenting either Key Phrase.

* * *

'To knowingly violate Plaintiff's right to such evidence, Judge Smith chose to criminally threaten Plaintiff and Plaintiff's counsel if Plaintiff continued to seek evidence of whether or not Powers' email contains either Key Phrase.

* * *

'Judge Smith's intimidation also was criminal because he used intimidation to personally conceal and help the Culprits conceal (and encourage the Culprits to conceal) evidence that he *knew* shows that DOL and DOJ employees (and Judge Contreras) committed federal crimes.

17

\* \* \*

'Judge Smith must state the law, not Lie about the law. The fact that Judge Smith has again willfully failed to state the law, and instead chosen to resort to threats speaks volumes.

[\* \* \*]

'Judge Smith is a traitor to the judiciary and an enemy of the Constitution. To *personally* criminally conceal evidence of *two phrases* on a *couple pages* of Powers' email—and to help the Culprits conceal such evidence—Judge Smith routinely Lies and commits crimes, including threatening and attempting to intimidate Plaintiff and Plaintiff's counsel.'

"102. On July 1, 2020, Judge Smith issued an order striking these two filings from the record due to noncompliance with the Court's June 30, 2020, Order.

"103. On July 6, 2020, Judge Smith issued an Order wherein he ruled that:

'Despite the Court's directive [in its June 30, 2020, order], Plaintiff's counsel filed two motions on July 1, 2020; (1) "Plaintiff's Motion for Order Stating the Law and Showing Judge Smith Did Not Lie About the Law," and (2) "Plaintiff's Motion for Order Stating the Law Showing Judge Smith's Threat Was Not Criminal." These motions are the precise type of filings prohibited by the Court. That is, the motions are "frivolous, unprofessional, and scurrilous, if not defamatory, in tone and content."'

18

"104. Judge Smith ruled that:

> 'Plaintiff and her counsel are prohibited from filing anything
> further in this matter without the Court's prior approval.
> Moreover, the Court will not allow Plaintiff and her counsel to
> file motions that seek the same relief sought in other motions,
> rehash arguments previously presented, or include frivolous,
> unprofessional, or scurrilous tone or content.'

"105. Judge Smith also ordered the respondent to provide a copy of the July 6, 2020, Order to his client, F.T.

"106. On July 6, 2020, the respondent filed 'Plaintiff's Motion for Leave to File Notice of Appeal.'

"107. This filing included, in part, the following statements by the respondent:

> 'Judge Smith has . . . (3) *knowingly* misrepresented that
> something about FOIA precludes all discovery in this case
> regarding anything more than the DOL's searches for records and
> (4) criminally threatened Plaintiff and Jordan for the purpose of
> helping the DOL and Ray conceal evidence of the Key Phrases.

> * * *

> 'The efforts by Judge Smith and Ray to conceal (from Plaintiff
> and Jordan) such material facts and relevant evidence is
> criminal.'

"108. On July 20, 2020, Judge Smith issued another order sanctioning the respondent in the amount of $500.00 '[f]or his repeated violations of [the] Court's Orders, including but not limited to the Court's Orders prohibiting Plaintiff's counsel from emailing Chambers staff and Clerk's Office staff.' Judge Smith further ordered that

19

'Plaintiff and her counsel are permitted to file a Notice of Appeal pertaining to this Order but shall not file anything further in this matter. The Court reiterates Plaintiff and her counsel are prohibited from contacting Chambers staff and Clerk's Office staff.'

"109.    Within his July 20, 2020, Order, Judge Smith also directed 'the Clerk's Office to transmit this Order to the Office of the Kansas Disciplinary Administrator and the New York Attorney Grievance Committee.'

"[R.C.] v. U.S. Department of Labor (19-cv-00905) in Western District of Missouri

"110.    In February 2019, the respondent filed a FOIA request on behalf of another client, R.C., for Powers' email. The request was denied that same month.

"111.    While the respondent represented F.T. in [*F.T.*] *v. U.S. Department of Labor*, 19-cv-00493, he also represented R.C. in a lawsuit filed November 9, 2019, in the District Court for the Western District of Missouri seeking injunctive relief allowing R.C. to obtain Powers' email, [*R.C.*] *v. U.S. Department of Justice*, 19-cv-00905.

"112.    On February 11, 2020, Judge Smith stayed proceedings in [*R.C.*] *v. U.S. Department of Justice*, 19-cv-00905 pending the Eighth Circuit's disposition of [*F.T.*] *v. U.S. Department of Labor*, 19-cv-00493, which was stayed pending the Eighth Circuit's disposition of *Jordan v. U.S. Department of Labor*, 18-cv-6129.

"113.    On May 6, 2020, the court lifted the stay.

"114.    On July 13, 2020, Judge Smith denied R.C.'s motion for judgment on the pleadings and granted the Department of Justice's motion for summary judgment.

"115.    On July 13, 2020, the respondent filed a notice of appeal on behalf of F.T. On July 14, 2020, the respondent filed a notice of appeal on behalf of R.C.

"116.    On July 14, 2020, the Eighth Circuit Court of Appeals docketed case number 20-2430, [*R.C.*] *v. U.S. Department of Labor*. On July 16, 2020, the Eighth

20

Circuit Court of Appeals docketed case number 20-2439, [*F.T.*] *v. U.S. Department of Labor*. On July 23, 2020, the Eighth Circuit Court of Appeals docketed case number 20-2494, *Jordan v. U.S. Department of Labor*.

"117.    On the court's own motion, R.C. and F.T.'s cases were consolidated for briefing, submission, and disposition. The *Jordan* case was treated as a back-to-back appeal and submitted to the same Eighth Circuit Court of Appeals panel.

"118.    On January 19, 2021, the respondent filed 'Appellant's Motion to Order the DOL and DOJ to Publicly File Parts of Powers' Email' in the *Jordan* case 20-2494.

"119.    Within this filing in the Eighth Circuit Court of Appeals, the respondent claimed that Judge Smith, Judge Contreras, and other federal district court judges and administrative law judges communicated to the respondent 'lies, threats, intimidation or punishment.' The respondent also claimed that Judge Smith and Judge Contreras violated canons of the Code of Judicial Conduct, violated federal law, committed crimes, and concealed evidence, among other allegations.

"120.    On January 20, 2021, the Eighth Circuit Court of Appeals ordered that the respondent's January 19, 2021, motion be taken with the case for consideration by the panel.

"121.    On July 30, 2021, the Eighth Circuit Court of Appeals affirmed the sanctions imposed on the respondent by the District Court.

"122.    On August 1, 2021, the respondent filed 'Appellant's Motion for the Issuance of a Published (Or At Least Reasoned) Opinion' in the Jordan case 20-2494.

"123.    Within this August 1, 2021, filing, the respondent stated, in part:

'Standing alone, the [Eighth Circuit Court of Appeals] Opinion shows no more ability to comprehend clear commands in federal law or the Constitution, or to write about the foregoing, than would be expected of a young college student who had either no real aptitude for or no genuine interest in even practicing law. The Opinion showed absolutely no comprehension of, much less respect for, the limits that all three judges *knew* Appellants clearly *showed* federal law, the Constitution and copious U.S. Supreme Court precedent imposed on their powers.

\* \* \*

'As the product of at least two circuit court judges, the opinion shows blatant disrespect for clearly controlling authority . . . .

\* \* \*

'The judges lied repeatedly.

\* \* \*

'The judges responsible for the Judgment and Opinions above are abusing the legitimacy and confidence that many federal judges have earned . . . .

\* \* \*

'They [the judges on the Eighth Circuit Court of Appeals panel] are essentially con men perpetrating a con, *i.e.*, playing a confidence game.'

22

"124. On August 2, 2021, the respondent filed 'Appellant's Motion for the Issuance of a Published (Or At Least Reasoned) Opinion' in the F.T. case 20-2439. In this filing, the respondent made the same types of statements as those made in the August 1, 2021, filing in the *Jordan* case 20-2494.

"125. On August 6, 2021, the Eighth Circuit Court of Appeals denied the August 1 and 2, 2021, motions. The Court directed the Clerk of the Court to serve copies of this August 6, 2021, order and the respondent's motion on the pertinent disciplinary bar authorities.

"126. On August 8, 2021, the respondent filed 'Appellant's Supplemental Memorandum Supporting Motion for the Issuance of a Published (Or At Least Reasoned) Opinion' in the *Jordan* case 20-2494.

"127. Within this filing, the respondent made similar statements as those made in his August 1 and 2, 2021 filings, including, in part:

'In a truly evil and utterly loathsome manner such [Eighth Circuit Court of Appeals panel] judges have attacked and undermined the very same federal law and Constitution that such judges swore they would "support and defend" *every* way possible in every appeal by bearing *"true faith and allegiance* to the" Constitution.

* * *

'The judges of this Court, themselves, deliberately fabricated that lie—because they *knew* Judge Smith and senior U.S. Department of Justice ("DOJ") attorneys blatantly and knowingly violated federal law (including FRCP Rules 43 and 56) and the First and Fifth Amendments and two FOIA requesters' rights thereunder.

23

*  *  *

'They [the Eighth Circuit Court of Appeals panel judges] are attacking the Constitution in an evil, violent, cowardly, loathsome manner by failing to address in this forum at this time the clear, emphatic Supreme Court precedent and provisions of federal law and the Constitution that have been presented to them repeatedly.

*  *  *

'The responsible judges' pretense that tacking a few citations onto their lies, above, somehow countered all the clear commands and prohibitions above was a blatant con job. It blatantly played on the confidence of Americans that federal circuit court judges would not *knowingly* and *deliberately* violate the Constitution and their oaths. It is impossible to show that any statement in anything these judges cited in any way countered anything that Appellant presented. Such citations were intended solely to deceive and lend false legitimacy to evil and violent attacks on the Constitution. They deceitfully purported to use Supreme Court decisions to attack and undermine the Constitution and other Supreme Court decisions directly on point. Those were the actions of devious, deceitful con men.'

"128.   On August 9, 2021, the Eighth Circuit Court of Appeals issued an Order denying the pending motions, ruled that no further filings from the respondent would be accepted in 20-2430, 20-2439, or 20-2494, 'except for a proper petition for rehearing,' and ordered the respondent 'to show cause within 30 days why he should not be suspended or disbarred from practicing law in this court.'

"129.   After this disciplinary matter was docketed, the respondent sent letters in response to the docketed complaint on April 7, 2020, June 12, 2020, July 10, 2020, July

24

27, 2020, December 9, 2020, December 11, 2020, December 21, 2020, and August 21, 2021.

"130.    Within the respondent's response letters, the respondent stated, in part:

'I reasonably believed every assertion I made about Judge Smith.

'Judge Phillips knowingly and willfully violated clear provisions of the U.S. Constitution and federal law governing her powers and duties as a judge or Chief Judge. *See id*. In connection with the foregoing, Judge Phillips knowingly and willfully committed crimes.

'The evidence shows that Judge Smith (and Deputy U.S. Attorney Jeffrey Ray and Judge Phillips) are using their positions to commit many crimes.

'The following tricks and devices used by Judge Smith were criminal attempts to conceal facts that were material to, and evidence that was relevant to, DOL and DOJ proceedings.

'It is an irrefutable fact that *any* government employee (including any DOJ attorney and any judge) involved in any of the FOIA cases pertaining to Powers' email is committing at *least* one federal crime by concealing the portions of Powers' email proving whether DOL ALJ Larry Merck in a DOL adjudication (to help defraud an employee who was seriously injured serving this country's interests working under difficult and dangerous conditions in Iraq) and then DOL or DOJ employees and Judge Contreras and Judge Smith (to defeat FOIA and undermine multiple courts and use courts for the same fraudulent purposes as ALJ Merck) knowingly misrepresented particular phrases and words in Powers' email. Such conduct clearly is criminal.

25

'Judges Smith and Phillips cannot circumvent and violate Respondent's constitutional rights by enlisting the aid of any state disciplinary authority.

'Judges Smith and Phillips clearly and irrefutably illegally and criminally sought to violate Respondent's rights under the Constitution and federal law by failing to address Respondent's conduct in compliance with the Constitution and federal law. They sought to make employees of the Kansas Court system their accomplices by shifting this matter to Kansas disciplinary proceedings.

'As you know, I have appealed to the Eighth Circuit the egregious efforts by Judges Smith and Phillips to abuse the Kansas Disciplinary Administrator to knowingly violate my rights under clear and mandatory federal law and the U.S. Constitution . . . . Please understand that Judges Smith and Phillips and DOJ attorneys are attempting to abuse state authorities to violate my rights under federal law (including federal criminal law) and the U.S. Constitution.'

"131. On November 2, 2021, the Eighth Circuit Court of Appeals issued an order disbarring the respondent from practicing law in the Eighth Circuit.

"132. On November 17, 2021, the Eighth Circuit Court of Appeals issued an order ruling that:

'[The respondent's] motion to vacate the Court's order of November 2, 2021 disbarring him from practicing law in this Court has been considered by the court, and the motion is denied. It is further ordered that Mr. Jordan is barred from

26

making any further filings in this case, including any filings related to his disbarment.'

"133.    During the hearing on this matter, the respondent testified that he carefully considered his filings in front of Judge Smith and Judge Phillips prior to filing them.

"134.    The respondent also stated during his testimony that:

'Judges have lied about Powers e-mail. They have never ruled. You cannot show me any decision where any judge has addressed any evidence that Powers e-mail could possibly be privileged. Not one. That's not a ruling, those are lies and crimes.'

"135.    Further, the respondent testified:

'What I have said is that they lied by saying things that they knew or believed were false, and I've said they've committed crimes by knowingly and willfully violating litigants' and lawyers' rights and privileges under the U.S. Constitution by concealing evidence that they knew was relevant. So it's—it's extremely false to say that what I said that they did was criminal was related exclusively to the content of Powers e-mail. It wasn't. It was—it was related first and foremost to the content of their judgments and opinions and the motions that were filed by the—by litigants, the filings—.'

"136.    When asked whether he 'truly believed that' his filings containing allegations against Judge Smith and Judge Phillips 'were necessary to get the evidence [he was] denied for years,' i.e., an unredacted copy of Powers' email, the respondent asserted his Fifth Amendment privilege and declined to testify. After asserting his Fifth Amendment privilege, the respondent was asked, '[b]ut you did not deny to answer that to

Mr. Stratton during the interview on July 9, 2020?' The respondent stated: 'Wait a minute. This is hearsay. If you want Mr. Stratton to come testify about what I said to him, get him to testify.'

"137.     The hearing panel concluded that the respondent waived his Fifth Amendment privilege regarding statements he made previously to Mr. Stratton during the disciplinary investigation.

"138.     Deputy disciplinary administrator W. Thomas Stratton, Jr., who conducted an investigation in this disciplinary matter, testified that he interviewed the respondent on July 9, 2020, and that the respondent 'sought to assure me he had carefully considered the course of action that he should take prior to making the allegations against Judge Smith, or any of the judges who were part of the Powers' e-mail litigation and against whom allegations have been made.' Further, Mr. Stratton testified the respondent 'said the allegations had not been made lightly at all. He truly believed they were necessary to get the evidence that has been denied for years and on which he has briefed many times to many courts.' Specifically, the evidence the respondent sought for years was '[t]he unredacted Powers e-mail in its entirety.'

"139.     Mr. Stratton testified that the respondent asked Mr. Stratton to obtain Powers' email and the respondent provided Mr. Stratton no evidence that the respondent or someone he associated with had viewed an unredacted version of Powers' email. Further, the respondent provided Mr. Stratton with no evidence to support the respondent's assertion that the judges had lied about the contents of Powers' email.

"140.     The respondent called no witnesses to testify and offered no exhibits for admission during the hearing.

*"Conclusions of Law*

"141.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 3.1 (meritorious claims and contentions),

28

KRPC 3.4(c) (fairness to opposing party and counsel), KRPC 8.2(a) (judicial and legal officials), and KRPC 8.4(d) and (g) (professional misconduct) as detailed below.

## "KRPC 3.1

"142.    'A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.' KRPC 3.1.

## "Applying Rule 220(b)

"143.    Pursuant to Rule 220(b) (2022 Kan. S. Ct. R. at 275), if based on a standard less than clear and convincing evidence, 'a certified copy of a judgment or ruling in any action involving substantially similar allegations as a disciplinary matter is prima facie evidence of the commission of the conduct that formed the basis of the judgment or ruling, regardless of whether the respondent is a party in the action.'

"144.    'The respondent has the burden to disprove the findings made in the judgment or ruling.' Rule 220(b) (2022 Kan. S. Ct. R. at 275).

"145.    Here, Chief Judge Phillips ruled on January 13, 2020, that the respondent's motion 'accuses Judge Smith of engaging in intentional wrongdoing: knowingly issuing unlawful orders, conspiring with Defendant's counsel, lying, and committing crimes,' and that the 'Filing does not support these accusations with any facts beyond Jordan's and [F.T.'s] disagreement with the Stay Order.' Chief Judge Phillips further found that 'it appears the Filing is intended to harass.'

"146.    The respondent had an opportunity to, and did answer Chief Judge Phillips' January 13, 2020, show cause order via an answer filed February 18, 2020 (with supplements and a declaration attached).

"147. On March 4, 2020, Chief Judge Phillips considered the respondent's answer and attached supplements and declaration and found the respondent's 'defense of his actions unpersuasive.' Chief Judge Phillips further ruled that the respondent presented no 'evidentiary support or the likelihood of evidentiary support for his accusations.'

"148. Chief Judge Phillips concluded that the respondent 'violated Rule 11 of the Federal Rules of Civil Procedure, and has done so in a manner that demonstrates his contempt for the Court' and that the respondent's filing 'contains multiple statements and accusations that had no reasonable basis in fact.' Chief Judge Phillips ruled that the respondent's 'conduct qualifies under the dictionary-definition of "contempt".'

"149. Chief Judge Phillips sanctioned the respondent and ordered him to pay $1,000.00 to the Clerk of the Court.

"150. Both the January 13, 2020, and March 4, 2020, orders were certified by the Clerk of the District Court for the Western District of Missouri.

"151. The respondent presented no evidence during the formal hearing to disprove the findings in Chief Judge Phillips' rulings.

"152. Applying Rule 220(b), based upon Chief Judge Phillips' rulings in her January 13, 2020, and March 4, 2020, orders, the hearing panel concludes that there is clear and convincing evidence that the respondent violated KRPC 3.1.

"Absent Application of Rule 220(b)

"153. Even without applying Rule 220(b), the hearing panel concludes that there is clear and convincing evidence that the respondent violated KRPC 3.1.

"154. Since becoming licensed to practice law in the state of Kansas in October 2019, the respondent made frivolous claims in [*F.T.*] *v. U.S. Department of Labor*, 19-cv-00493 in the following filings (filed in the District Court for the Western District of Missouri, unless otherwise indicated):

30

- 'November 19, 2019, "Plaintiff's Suggestions Supporting Motion to Remedy Judge Smith's Lies and Crimes and Lift the Stay or Disqualify Judge Smith";

- 'February 18, 2020, "Answer to Show Cause Order Regarding Contentions That Judge Smith Asserted Lies and Committed Crimes", "Supplement A: Analysis of Crimes and Lies By Judge Smith and Jeffrey Ray", "Supplement B: Analysis of FOIA and Related Legal Authorities That Judge Smith is Evading by Staying Cases Pertaining to Powers' Email", and "Declaration of Jack Jordan";

- 'April 1, 2020, "Notice of Noncompliance with Illegal and Criminal Order Purporting to Impose Criminal Penalties";

- 'May 5, 2020, "Plaintiff's Motion to Reconsider and Vacate Order Imposing Sanctions and Order Refusing to Disqualify Judge Smith";

- 'May 6, 2020, "Plaintiff's Supplement to Motion to Reconsider and Vacate Order Imposing Sanctions";

- 'May 13, 2020, "Plaintiff's Second Supplement to Motion to Reconsider and Vacate Order Imposing Sanctions";

- 'June 29, 2020, "Plaintiff's Corrected Motion to Reconsider and Vacate Judge Smith's Lies and Evidence of Criminal Conspiracy to Conceal Material Facts and Dispositive Evidence";

- 'July 1, 2020, "Plaintiff's Motion for Order Stating the Law and Showing Judge Smith did not Lie About the Law";

31

- 'July 1, 2020, "Plaintiff's Motion for Order Stating the Law Showing Judge Smith's Threat was not Criminal";

- 'January 19, 2021, "Appellant's Motion to Order the DOL and DOJ to Publicly File Parts of Powers' Email" filed in the Eighth Circuit Court of Appeals;

- 'August 1, 2021, "Appellant's Motion for the Issuance of a Published (Or At Least Reasoned) Opinion" filed in two cases in the Eighth Circuit Court of Appeals; and

- 'August 8, 2021, "Appellant's Supplemental Memorandum Supporting Motion for the Issuance of a Published (Or At Least Reasoned) Opinion" filed in the Eighth Circuit Court of Appeals.'

"155.    Only a portion of the frivolous statements the respondent made are quoted in the findings of fact above. There were many other frivolous statements made by the respondent about the presiding judges and others involved in the referenced litigation, but for the sake of brevity, those are not explicitly quoted in this report. The hearing panel concludes that, at minimum, all of the statements by the respondent in these filings that are quoted or cited in the findings of fact section contain an assertion or controvert an issue therein that is frivolous.

"156.    Within these filings, the respondent repeatedly made frivolous claims that Judge Smith lied, violated his oath of office, violated the U.S. Constitution, was committing crimes, confessed to committing a crime, committed 'treason to the Constitution,' was 'blatantly deceitful,' declared his intent to defraud or decide the case fraudulently, illegally targeted and threatened F.T., engaged in actions that were designed to illegally intimidate F.T., used his position and authority to attack and undermine the U.S. Constitution and federal law, used and conspired with Chief Judge Phillips to violate the respondent's due process rights, supported and defended enemies of the Constitution, violated canons of the Code of Judicial Conduct, and concealed evidence.

32

"157.    Regarding Chief Judge Phillips, within these filings the respondent repeatedly made frivolous claims that Chief Judge Phillips blocked the respondent's access to relevant evidence, issued a show cause order that was patently illegal, asserted issues that were irrelevant and asserted one contention that was false, was undermining the institutions she swore to protect, knew her conduct was illegal and criminal, issued an order to show cause and order holding the respondent in criminal contempt that were illegal and criminal, and conspired with Judge Smith to violate the respondent's due process rights.

"158.    The respondent repeatedly made frivolous claims about the Eighth Circuit Court of Appeals judges who sat on the panel to decide the respondent's appeals, including his assertions that the panel judges lied repeatedly, abused the 'legitimacy and confidence that many federal judges have earned,' were 'con men perpetrating a con, *i.e.*, playing a confidence game,' attacked and undermined federal law and the U.S. Constitution, deliberately fabricated a lie, attacked the Constitution 'in an evil, violent, cowardly, loathsome manner,' and cited to Supreme Court decisions to undermine other Supreme Court decisions the respondent deemed directly on point and 'to deceive and lend false legitimacy to evil and violent attacks on the Constitution.'

"159.    These statements were all made by the respondent and were all contained in the respondent's filings in the District Court for the Western District of Missouri and/or in the respondent's filings in the Eighth Circuit Court of Appeals.

"160.    Further, during the disciplinary investigation in this matter, the respondent submitted numerous letters to the disciplinary administrator's office making the same frivolous claims as he made in his court filings.

"161.    The respondent provided no evidence to support the claims he made in his November 19, 2019, filing or later filings and did not establish that there was likely any evidence to support these claims. An attorney's own belief in his accusations about a judge, when unsupported by the record, does not support his claim. See *In re Landrith*, 280 Kan. 619, 644, 124 P.3d 467 (2005).

"162.    During the formal hearing, the respondent presented no evidence to show he had a basis to make these claims that was not frivolous.

"163.    Accordingly, the hearing panel concludes, without applying Rule 220(b), that there is clear and convincing evidence that the respondent violated KRPC 3.1.

"KRPC 3.4(c)

"164.    Clearly, lawyers must comply with court rules and orders. Specifically, KRPC 3.4(c) provides: '[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.'

"165.    In this case, the respondent violated KRPC 3.4(c) by repeatedly violating Federal Rule of Civil Procedure ('FRCP') 11 and filing motions in the District Court for the Western District of Missouri that were prohibited by court order.

"Applying Rule 220(b)—Violation of FRCP 11

"166.    Pursuant to Rule 220(b) (2022 Kan. S. Ct. R. at 275), if based on a standard less than clear and convincing evidence, 'a certified copy of a judgment or ruling in any action involving substantially similar allegations as a disciplinary matter is prima facie evidence of the commission of the conduct that formed the basis of the judgment or ruling, regardless of whether the respondent is a party in the action.'

"167.    'The respondent has the burden to disprove the findings made in the judgment or ruling.' Rule 220(b) (2022 Kan. S. Ct. R. at 275).

"168.    On January 13, 2020, Chief Judge Phillips ordered the respondent to show cause why he and F.T. 'should not be sanctioned for violating Rule 11(b)(3).'

34

"169.    The respondent had an opportunity to, and did answer Chief Judge Phillips' January 13, 2020, show cause order via an answer filed February 18, 2020 (with supplements and a declaration attached).

"170.    On March 4, 2020, Chief Judge Phillips ruled that the respondent 'violated Rule 11 of the Federal Rules of Civil Procedure, and has done so in a manner that demonstrates his contempt for the Court' and that the respondent's filing 'contains multiple statements and accusations that had no reasonable basis in fact.' Chief Judge Phillips ruled that the respondent's 'conduct qualifies under the dictionary-definition of "contempt"'.

"171.    Federal Rule of Civil Procedure 11(b)(3) provides:

'By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .'

"172.    Chief Judge Phillips imposed a sanction on the respondent for his violation of FRCP 11(b)(3) in the amount of $1,000.00, to be paid to the Clerk of the Court.

"173.    Chief Judge Phillips' March 4, 2020, order is prima facie evidence that the respondent 'knowingly disobey[ed] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.' See KRPC 3.4(c); Rule 220(b) (2022 Kan. S. Ct. R. at 275).

"174.    The March 4, 2020, order was certified by the Clerk of the District Court for the Western District of Missouri.

"175.    The respondent presented no evidence during the formal hearing to disprove the findings in Chief Judge Phillips' ruling and none is found in the record.

"176.    Applying Rule 220(b), based upon Chief Judge Phillips' rulings in her March 4, 2020, order, the hearing panel concludes there is clear and convincing evidence that the respondent violated KRPC 3.4(c).

"Absent Application of Rule 220(b)—Violation of FRCP 11

"177.    Even without applying Rule 220(b), the hearing panel concludes that there is clear and convincing evidence that the respondent violated KRPC 3.4(c) by violating FRCP 11.

"178.    In his filings in the District Court for the Western District of Missouri, including his answer and attached documents to Chief Judge Phillips' January 13, 2020, show cause order, the respondent provided no evidence to support his claims in his November 19, 2019, filing and did not establish that there was likely any evidence to support these claims.

"179.    During the formal hearing, the respondent presented no evidence to show the factual contentions he made in his November 19, 2019, filing had evidentiary support or would likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

"180.    The hearing panel concludes that the respondent's violation of KRPC 3.4(c) was knowing (and intentional) because the respondent testified during the formal hearing that he carefully considered his filings in front of Judge Smith and Chief Judge Phillips prior to filing them and continued to assert during his testimony at the formal hearing that these judges lied about Powers' email, concealed evidence, and committed crimes despite an absence of evidence to support his contentions.

"181.    Further, the hearing panel concludes based on the evidence that the respondent's conduct was knowing (and intentional) because the respondent had not read an unredacted version of Powers' email at the time he made the allegations in his November 19, 2019, filing. See Rule 240 (2022 Kan. S. Ct. R. at 323) ('[t]he Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question.'). Thus, the respondent's allegations about Judge Smith in his November 19, 2019, filing was based on the respondent's knowledge that he lacked evidence of what Powers' email actually said.

"182.    Accordingly, the hearing panel concludes, without applying Rule 220(b), there is clear and convincing evidence that the respondent violated KRPC 3.4(c) by knowingly disobeying FRCP 11(b)(3).

"Applying Rule 220(b)—Violation of Court Order

"183.    Pursuant to Rule 220(b) (2022 Kan. S. Ct. R. at 275), if based on a standard less than clear and convincing evidence, 'a certified copy of a judgment or ruling in any action involving substantially similar allegations as a disciplinary matter is prima facie evidence of the commission of the conduct that formed the basis of the judgment or ruling, regardless of whether the respondent is a party in the action.'

"184.    'The respondent has the burden to disprove the findings made in the judgment or ruling.' Rule 220(b) (2022 Kan. S. Ct. R. at 275).

"185.    Here, Judge Smith ruled on July 6, 2020, that:

'Despite the Court's directive [in its June 30, 2020, order], Plaintiff's counsel filed two motions on July 1, 2020; (1) "Plaintiff's Motion for Order Stating the Law and Showing Judge Smith Did Not Lie About the Law," and (2) "Plaintiff's Motion for Order Stating the Law Showing Judge Smith's Threat Was

37

Not Criminal." These motions are the precise type of filings prohibited by the Court. That is, the motions are "frivolous, unprofessional, and scurrilous, if not defamatory, in tone and content.'"

"186.   Further, on July 20, 2020, Judge Smith issued an order sanctioning the respondent in the amount of $500.00 '[f]or his repeated violations of [the] Court's Orders, including but not limited to the Court's Orders prohibiting Plaintiff's counsel from emailing Chambers staff and Clerk's Office staff.'

"187.   The July 6, 2020, and July 20, 2020, orders were certified by the Clerk of the District Court for the Western District of Missouri.

"188.   The respondent presented no evidence during the formal hearing to disprove the findings in Judge Smith's rulings and none is found in the record.

"189.   Applying Rule 220(b), based upon Judge Smith's rulings in his July 6, 2020, and July 20, 2020, orders, the hearing panel concludes there is clear and convincing evidence that the respondent violated KRPC 3.4(c).

"Absent Application of Rule 220(b)—Violation of Court Order

"190.   Even without applying Rule 220(b), the hearing panel concludes that there is clear and convincing evidence that the respondent violated KRPC 3.4(c) by violating Judge Smith's June 30, 2020, court order.

"191.   On June 30, 2020, Judge Smith issued an order ruling as follows:

'Plaintiff's counsel has filed numerous motions in this matter, including but not limited to ten motions to reconsider (not including the motions discussed above). These motions, including the most recently filed motions, are largely frivolous, unprofessional, and scurrilous, if not defamatory, in tone and

38

content. The Court refers Plaintiff's counsel to Judge Phillips's March 4, 2020 Order wherein Judge Phillips determined Plaintiff's counsel violated Rule 11, sanctioned him, and referred him to the Kansas Bar Association.

'Three dispositive motions are pending in this matter. Yet, Plaintiff continues to file other motions. The Court warns Plaintiff that additional frivolous motion practice will be met with additional sanctions, another referral to the Kansas Bar Association, and referrals to other jurisdictions wherein counsel is licensed to practice law. This warning should not come as a surprise to Plaintiff's counsel because other courts recently issued similar warnings to counsel.'

"192.    On July 1, 2020, the respondent filed two documents in the matter. One was 'Plaintiff's Motion for Order Stating the Law and Showing Judge Smith did not Lie About the Law,' and the second was 'Plaintiff's Motion for Order Stating the Law Showing Judge Smith's Threat was not Criminal'.

"193.    Within these documents, the respondent stated, in part:

'Judge Smith is committing crimes by *personally* concealing evidence of whether or not (1) Powers' email contains either Key Phrase and (2) Clubb and Ray acted in bad faith by misrepresenting either Key Phrase.

* * *

'To *knowingly* violate Plaintiff's right to such evidence, Judge Smith chose to criminally threaten Plaintiff and Plaintiff's counsel if Plaintiff continued to seek evidence of whether or not Powers' email contains either Key Phrase.

39

'Judge Smith's intimidation also was criminal because he used intimidation to personally conceal and help the Culprits conceal (and encourage the Culprits to conceal) evidence that he *knew* shows that DOL and DOJ employees (and Judge Contreras) committed federal crimes.

* * *

'Judge Smith must state the law, not Lie about the law. The fact that Judge Smith has again willfully failed to state the law, and instead chosen to resort to threats speaks volumes.

* * *

'. . . Judge Smith is a traitor to the judiciary and an enemy of the Constitution. To *personally* criminally conceal evidence of two phrases on a *couple pages* of Powers' email—and to help the Culprits conceal such evidence—Judge Smith routinely Lies and commits crimes, including threatening and attempting to intimidate Plaintiff and Plaintiff's counsel.'

"194.   The hearing panel concludes that the respondent's July 1, 2020, filings were filed in violation of the court's June 30, 2020, order.

"195.   Further, the hearing panel concludes that the respondent's violation of KRPC 3.4(c) was knowing (and intentional) because the respondent testified during the formal hearing that he carefully considered his filings in front of Judge Smith and Chief Judge Phillips prior to filing them and continued to assert during his testimony at the formal hearing that these judges lied about Powers' email, concealed evidence, and committed crimes despite an absence of evidence to support his contentions.

"196.    Further, the hearing panel concludes based on the evidence that the respondent's conduct was knowing (and intentional) because the respondent had not read an unredacted version of Powers' email at the time he made the allegations in his November 19, 2019, filing. See Rule 240 (2022 Kan. S. Ct. R. at 323) ('[t]he Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question . . .').

"197.    KRPC 3.4(c) provides an exception for where a lawyer disobeys an obligation of a tribunal when the lawyer presents 'an open refusal based on an assertion that no valid obligation exists.' The panel finds that the respondent provided no evidence to show that the order he refused to obey was anything other than a valid obligation as set out in the rule.

"198.    Accordingly, the hearing panel concludes, without applying Rule 220(b), there is clear and convincing evidence that the respondent's July 1, 2020, filings made claims that were frivolous and that the respondent violated KRPC 3.4(c) by knowingly disobeying the court's order that he cease filing further frivolous motions.

"KRPC 8.2(a)

"199.    KRPC 8.2(a) provides:

'A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.'

"200.    The respondent asserts that the First Amendment to the United States Constitution and United States Supreme Court case law such as *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), *N.A.A.C.P. v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d

41

417 (1978), and *Pickering v. Board of Ed.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), requires that the disciplinary administrator's office prove that the statements he made about judges in his filings were false. Further, the respondent argues that the disciplinary administrator's office must not only prove that he asserted a falsehood, but that he did so with actual malice. He argues that the disciplinary administrator's office failed to prove that he made any false statement with actual malice. The respondent's arguments are not supported by United States Supreme Court and Kansas Supreme Court case law surrounding attorney discipline matters.

"201.    '[B]oth the United States Supreme Court and this court have previously recognized that the freedom of speech is not inevitably without limitation. Lawyers, in particular, trade certain aspects of their free speech rights for their licenses to practice.' *In re Comfort*, 284 Kan. 183, 202, 159 P.3d 1011 (2007).

"202.    In *In re Pyle*, 283 Kan. 807, 821, 156 P.3d 1231 (2007), the Supreme Court held that it was required 'to navigate the tension between First Amendment freedom of speech, enjoyed by all citizens, and the limits that can be placed on exercise of that freedom because a particular citizen chose to become a Kansas lawyer.'

"203.    The Court held:

> 'A lawyer, as a citizen, has a right to criticize a judge or other adjudicatory officer publicly. To exercise this right, the lawyer must be certain of the merit of the complaint, use appropriate language, and avoid petty criticisms. Unrestrained and intemperate statements against a judge or adjudicatory officer lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.'

*Pyle*, 283 Kan. at 821, quoting *In re Johnson*, 240 Kan. 334, 336, 729 P.2d 1175 (1986).

"204.   '[E]ven a statement cast in the form of an opinion ("I think that Judge X is dishonest") implies a factual basis, and the lack of support for that implied factual assertion may be a proper basis for a penalty.' *Pyle*, 283 Kan. at 821, quoting *Matter of Palmisano*, 70 F.3d 483,487 (7th Cir. 1995), *cert. denied* 517 U.S. 1223, 116 S.Ct. 1854, 134 L.Ed.2d 954 (1996).

"205.   The *Pyle* court discussed *In re Landrith*, 280 Kan. 619, 124 P.3d 467 (2005), in which case the Court 'disbarred an attorney for, among other violations, his repeated baseless, inflammatory, and false accusations against opposing counsel, judges, state district court employees, Court of Appeals staff, and municipal officers and employees.' *Pyle*, 283 Kan. at 822.

"206.   The *Pyle* court noted that in *Landrith*:

'Landrith produced no evidence to support any of his accusations but argued that the First Amendment protected his speech. We rejected his argument, emphasizing that, in those instances where a lawyer's unbridled speech amounts to misconduct that threatens a significant State interest, it is clear that a State may restrict the lawyer's exercise of personal rights guaranteed by the federal and state Constitutions.'

*Pyle*, 283 Kan. at 822, citing *N.A.A.C.P. v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

"207.   'A lawyer's right to free speech is tempered by his or her obligations to the courts and the bar, obligations ordinary citizens do not undertake.' *Pyle*, 283 Kan. at 822-823, citing *State v. Nelson*, 210 Kan. 637, 504 P.2d 211 (1972); see *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S. Ct. 2720, 115 L.Ed.2d 888 (1991); see also *In re Sawyer*, 360 U.S. 622, 79 S. Ct. 1376, 3 L.Ed.2d 1473 (1959). 'It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to "free speech" an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim

for appeal.' *Gentile*, 501 U.S. at 1071, citing *Sacher v. United Sates*, 343 U.S. 1, 8, 72 S. Ct. 451, 96 L. Ed. 717 (1952); see *Fisher v. Pace*, 336 U.S. 155, 69 S. Ct. 425, 93 L. Ed. 569 (1949).

"208.    Courts weigh 'the State's interest in the regulation of a specialized profession against a lawyer's First Amendment interest in the kind of speech that was at issue.' *Gentile*, 501 U.S. at 1073.

> 'Appellant as a citizen could not be denied any of the common
> rights of citizens. But he stood before the inquiry and before the
> Appellate Division in another quite different capacity, also. As a
> lawyer he was an "officer of the court, and, like the court itself,
> an instrument . . . of justice . . . ."'

*Gentile*, 501 U.S. at 1074, quoting *In re Cohen*, 7 N.Y.2d 488, 495, 199 N.Y.S.2d 658, 166 N.E.2d 672 (1960), also quoted in *Cohen v. Hurley*, 366 U.S. 117, 126, 81 S.Ct. 954, 6 L.Ed.2d 156 (1961).

"209.    KRPC 8.2(a) is violated if a lawyer makes a statement that the [lawyer] knows to be false, or if the lawyer makes a statement 'with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . .' KRPC 8.2(a). The hearing panel concludes that KRPC 8.2(a) is sufficiently clear in the conduct it proscribes and that KRPC 8.2(a) is not unconstitutional.

"210.    Thus, the hearing panel disagrees with the respondent's assertion that the disciplinary administrator's office must prove that the respondent made a false statement with actual malice. United States Supreme Court and Kansas Supreme Court case law is clear that a lawyer may be held to the requirements of KRPC 8.2(a) in an attorney discipline matter without infringing on the lawyer's rights under the First Amendment.

44

"211.    Pursuant to Rule 220(b) (2022 Kan. S. Ct. R. at 275), if based on a standard less than clear and convincing evidence, 'a certified copy of a judgment or ruling in any action involving substantially similar allegations as a disciplinary matter is prima facie evidence of the commission of the conduct that formed the basis of the judgment or ruling, regardless of whether the respondent is a party in the action.'

"212.    'The respondent has the burden to disprove the findings made in the judgment or ruling.' Rule 220(b) (2022 Kan. S. Ct. R. at 275).

"213.    On March 4, 2020, Chief Judge Phillips ruled that:

'Jordan has made baseless allegations that Judge Smith intentionally and knowingly issued legally incorrect rulings, engaged in criminal misconduct, lied, and conspired with one of the parties in a case to the detriment of the other. Thus, Jordan has made statements about Judge Smith's qualifications and integrity that he knew were false or, at least, he acted with reckless disregard to their truth or falsity when he signed and submitted the [November 19, 2019] Filing. This violates Rule 4-8.2(a).'

"214.    Missouri Rule of Professional Conduct 4-8.2(a) contains the exact same language as KRPC 8.2(a).

"215.    Chief Judge Phillips' March 4, 2020, order is prima facie evidence that the respondent made 'a statement that [the respondent knew] to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of' Judge Smith. See KRPC 8.2(a); Rule 220(b) (2022 Kan. S. Ct. R. at 275).

"216.    The March 4, 2020, order was certified by the Clerk of the District Court for the Western District of Missouri.

45

"217.    The respondent presented no evidence during the formal hearing to disprove the findings in Chief Judge Phillips' ruling and none is found in the record.

"218. Applying Rule 220(b), based upon Chief Judge Phillips' rulings in her March 4, 2020, order, the hearing panel concludes there is clear and convincing evidence that the respondent violated KRPC 8.2(a).

"Absent Application of Rule 220(b)

"219.    Even without applying Rule 220(b), the hearing panel concludes that there is clear and convincing evidence that the respondent violated KRPC 8.2(a) with his statements about Judge Smith, Chief Judge Phillips, and the Eighth Circuit Court of Appeals panel judges.

"220.    In around a dozen filings from 2019 to 2021, the respondent repeatedly made serious derogatory allegations about the qualifications and integrity of Judge Smith, Chief Judge Phillips, and the panel judges of the Eighth Circuit Court of Appeals. These included allegations of criminal activity, lies, misrepresentations, conspiracy with parties to matters pending before the court, violations of the judicial canons, and even treason to the Constitution. All of these allegations stem, in one way or another, from these judges' rulings in connection with decisions to decline to order disclosure of Powers' email, which these judges concluded was protected from disclosure by attorney-client privilege.

"221.    The hearing panel concludes that the respondent's violation of KRPC 3.4(c) was knowing (and intentional) because the respondent testified during the formal hearing that he carefully considered his filings in front of Judge Smith and Chief Judge Phillips prior to filing them and continued to assert during his testimony at the formal hearing that these judges lied about Powers' email, concealed evidence, and committed crimes despite an absence of evidence to support his contentions.

"222.    Further, the hearing panel concludes based on the evidence that the respondent's conduct was knowing (and intentional) because the respondent had not read

46

an unredacted version of Powers' email prior to these statements about Judge Smith, Chief Judge Phillips, and the panel judges. See Rule 240 (2022 Kan. S. Ct. R. at 323) ('[t]he Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question . . .').

"223. The respondent's allegations that any judge lied about the privileged status of or what was contained in the unredacted version of Powers' email (or any of his other allegations stemming from that premise, including criminal activity, conspiracy, treason, etc.) were, at the very least, made with reckless disregard for the truth or falsity of the qualifications or integrity of Judge Smith, Chief Judge Phillips, and the panel judges. See KRPC 8.2(a).

"224. The hearing panel concludes that the reasoning the respondent provided in argument for why he made those allegations against Judge Smith, Chief Judge Phillips, and the panel judges is unpersuasive.

"225. Accordingly, the hearing panel concludes there is clear and convincing evidence that the respondent repeatedly violated KRPC 8.2(a) in his filings in the District Court for the Western District of Missouri in [*F.T.*] *v. U.S. Department of Labor*, 19-cv-00493 and the Eighth Circuit Court of Appeals in docket numbers 20-2439, [*F.T.*] *v. U.S. Department of Labor* and 20-2494, *Jordan v. U.S. Department of Labor*.

"KRPC 8.4(d) and 8.4(g)

"226. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). Further, '[i]t is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g).

"227. The following is not an exhaustive list of the ways the respondent violated KRPC 8.4(d) and (g), but are a few representative examples of his violations of these rules.

47

"228.    The respondent engaged in conduct that was prejudicial to the administration of justice and adversely reflects on his fitness to practice law when he made numerous statements about Judge Smith, Chief Judge Phillips, and the Eighth Circuit panel judges that were personal derogatory attacks, served no legitimate purpose other than to insult and harass the judges, and were not supported by any credible evidence.

"229.    The respondent engaged in conduct that was prejudicial to the administration of justice and adversely reflects on his fitness to practice law when he, as determined by the hearing panel above, violated Federal Rule of Civil Procedure 11(b)(3), and violated Judge Smith's June 30, 2020, order. This conduct resulted in the respondent being sanctioned and ordered to pay $1,000.00 by Chief Judge Phillips on March 4, 2020, and again being sanctioned and ordered to pay $500.00 by Judge Smith on July 20, 2020.

"230.    The respondent engaged in conduct that was prejudicial to the administration of justice and adversely reflects on his fitness to practice law when his conduct required judicial reassignment to another Article III judge for the purpose of a show cause hearing for the respondent to show why he and his client F.T. should not be held in contempt.

"231.    The respondent engaged in conduct that was prejudicial to the administration of justice and adversely reflects on his fitness to practice law when he filed the April 1, 2020, 'Notice of Noncompliance with Illegal and Criminal Order Purporting to Impose Criminal Penalties' on April 1, 2020, wherein the respondent did not merely argue that Chief Judge Phillips' sanction order was invalid but asserted that the order was 'criminal'.

"232.    The respondent engaged in conduct that was prejudicial to the administration of justice and adversely reflects on his fitness to practice law when the respondent filed repeated motions to reconsider, all containing the same frivolous allegations about judges and attorneys and rehashing the same arguments the respondent

48

had presented previously to the same court and for which the respondent had been sanctioned. These included the Respondent's May 5, 2020, 'Plaintiff's Motion to Reconsider and Vacate Order Imposing Sanctions and Order Refusing to Disqualify Judge Smith', May 6, 2020, 'Plaintiff's Supplement to Motion to Reconsider and Vacate Order Imposing Sanctions', May 13, 2020, 'Plaintiff's Second Supplement to Motion to Reconsider and Vacate Order Imposing Sanctions', and June 29, 2020, 'Plaintiff's Corrected Motion to Reconsider and Vacate Judge Smith's Lies and Evidence of Criminal Conspiracy to Conceal Material Facts and Dispositive Evidence'.

"233.   The respondent engaged in conduct that was prejudicial to the administration of justice and adversely reflects on his fitness to practice law when he filed two motions on July 1, 2020 and a July 6, 2020 'Motion for Leave to File Notice of Appeal', that violated Judge Smith's June 30, 2020, order, and that contained the same frivolous allegations about judges and attorneys and rehashed the same arguments the respondent had presented previously to the same court and for which the respondent had been sanctioned.

"234.   The respondent engaged in conduct that was prejudicial to the administration of justice and adversely reflects on his fitness to practice law when the respondent filed the August 1, 2020, and August 2, 2020, 'Motions for Issuance of a Published (Or At Least Reasoned) Opinion' and later the August 8, 2020, 'Supplemental Memorandum Supporting Motion for the Issuance of a Published (Or At Least Reasoned) Opinion' in the Eighth Circuit Court of Appeals that served no legitimate purpose in the appeal.

"235.   The hearing panel notes that on November 2, 2021, the Eighth Circuit Court of Appeals disbarred the respondent from practicing in that court. On November 17, 2021, the Eighth Circuit denied the respondent's motion to vacate the disbarment order and barred the respondent from making any further filings in the case, including filings relating to his disbarment. The disciplinary administrator's office did not argue, and the hearing panel does not make a finding whether the discipline imposed against the respondent in the Eighth Circuit is evidence of reciprocal discipline warranting application of Rule 221 (2022 Kan. S. Ct. R. at 276). However, the Eighth Circuit's

49

orders are evidence of the prejudicial impact of the respondent's conduct on the administration of justice and adversely reflect on his fitness to practice law.

"236.    Accordingly, the hearing panel concludes there is clear and convincing evidence that the respondent engaged in conduct that was prejudicial to the administration of justice and that adversely reflects on his fitness to practice law, in violation of KRPC 8.4(d) and KRPC 8.4(g).

"*American Bar Association
Standards for Imposing Lawyer Sanctions*

"237.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"238.    *Duty Violated*. The respondent violated his duty to the legal system and to the legal profession.

"239.    *Mental State*. The respondent intentionally violated his duties. The respondent confirmed during his testimony at the formal hearing that he carefully considered the statements he made in his filings. Further, the investigator, Mr. Stratton, testified that the respondent told Mr. Stratton that 'he had carefully considered the course of action that he should take prior to making the allegations against' the federal judges, that 'the allegations had not been made lightly at all' and that he 'truly believed they were necessary to get the evidence that has been denied for years.' The respondent was warned several times by the judges he appeared before that his conduct was sanctionable and violated attorney ethical rules, but he persisted in the same type of conduct in repeated filings making the same statements and rehashing the same arguments. The respondent's repeated derogatory statements of a similar nature in numerous filings about judges and attorneys involved in the underlying federal cases establishes his conduct was intentional.

50

"240. *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to the legal system and to the legal profession. See *In re Landrith*, 280 Kan. 619, 648, 124 P.3d 467 (2005) (respondent's conduct caused injury to the legal system by wasting valuable court resources and injury to the legal profession by his false accusations against members of the judiciary, attorneys, and others).

"Aggravating and Mitigating Factors

"241. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"242. *Prior Disciplinary Offenses*. The respondent has been previously disciplined on one occasion. The respondent was disbarred from practicing in the Eighth Circuit on November 2, 2021. The respondent's motion to vacate his disbarment in the Eighth Circuit was denied, and he was barred from any further filings in that court on November 17, 2021.

"243. *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct by repeatedly engaging in similar misconduct and violations of Kansas Rules of Professional Conduct 3.1, 3.4(c), 8.2(a), and 8.4(d) and (g) from the time he became licensed to practice law in Kansas in late 2019 until 2021. The respondent engaged in the misconduct found by the hearing panel in at least 12 filings in the District Court for the Western District of Missouri and the Eighth Circuit Court of Appeals.

"244. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 3.1 (meritorious claims and contentions), KRPC 3.4(c) (fairness to opposing party and counsel), KRPC 8.2(a) (judicial and legal officials), and KRPC 8.4(d) and (g) (professional misconduct). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

51

"245.    *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. During his testimony, the respondent invoked the Fifth Amendment privilege against self-incrimination. On several of the occasions the respondent invoked the Fifth Amendment privilege, the hearing panel concluded that the privilege did not apply and directed the respondent to answer the question posed. This included questions the respondent was asked about statements he had previously made to the individual investigating this disciplinary matter. Despite the hearing panel's direction that the respondent answer these questions, the respondent refused. The hearing panel concludes that this conduct constituted bad faith obstruction of the disciplinary proceeding by the respondent intentionally failing to comply with rules or orders of the disciplinary process. Further, the respondent sent emails to the hearing panel members, attorneys for the disciplinary administrator's office and the kbda@kscourts.org email address—which is the official filing email address for the Kansas Board for Discipline of Attorneys—containing arguments regarding his disciplinary matter after the November 19, 2021, deadline for filing motions set by the hearing panel and without seeking prior permission to do so. In an email sent on December 19, 2021, the respondent stated, in part, that 'ODA and Panel attorneys are abusing their powers to pretend they have the authority to harass good Constitution-supporting attorneys who expose lies and crimes of judges and government attorneys,' and '[y]ou violated the U.S. Constitution and your own oaths (and commit federal crimes) by pretending that you have the power to do what state judges clearly and irrefutably lack the power to do.'

"246.    *Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process*. On December 17, 2021, the disciplinary administrator's office filed a 'Notice of Intent to Call Witnesses', which the hearing panel previously ordered it to file if it planned to call witnesses during the hearing. On December 18, 2021, the respondent filed 'Objections to ODA Witnesses'. On January 5, 2022, at 7:49 a.m., the respondent sent an email to Ms. Walker, Ms. Hart, all three members of the hearing panel, and the kbda@kscourts.org email address asking Ms. Walker and Ms. Hart to '[p]lease confirm that you will not call any judge or government attorney to testify at the hearing.' Later that same day, at 5:04 p.m., the respondent sent an email to Ms. Walker, Ms. Hart, all three members of the hearing panel, and the

52

kbda@kscourts.org email address stating, 'The hearing will begin in less than a week. Please kindly provide the information I requested below.' The respondent failed to disclose to the hearing panel that that same day, at 3:22 p.m., Ms. Walker sent an email to the respondent and Ms. Hart only that stated: 'We have complied with the orders of the panel and have filed notice of the witnesses we believe we will need to call at this time. Although we do not anticipate it, if that changes we would file notice with the hearing panel.' Further, the respondent asserted that the disciplinary administrator's office asserted 'falsehoods' in its 'briefing,' relied on 'bushwhacking tactics to prevail,' and were 'knowingly violating Respondent's rights.' The respondent made similar statements in motions he filed in this disciplinary matter. The hearing panel concludes that the respondent had no reasonable basis to make these statements and that his conduct in presenting these statements to the hearing panel was deceptive.

"247. *Refusal to Acknowledge Wrongful Nature of Conduct*. The respondent has refused to acknowledge his repeated violations of KRPC 3.1, 3.4(c), 8.2(a), or 8.4(d) and (g). Instead, the respondent has maintained throughout these proceedings that he has not committed any misconduct and that he was entitled to make the statements he made about the judges and attorneys in federal court. Accordingly, the hearing panel concludes that the respondent refused to acknowledge the wrongful nature of his conduct.

"248. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 2019. The respondent was admitted to the practice of law in New York in 1998. At the time of the misconduct, the respondent had been licensed to practice law in at least one state for more than 20 years. The hearing panel concludes that the respondent had substantial experience in the practice of law at the time of his misconduct.

"249. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

53

"250. *Imposition of Other Penalties or Sanctions*. The respondent has experienced other sanctions for his conduct. The respondent was sanctioned and ordered to pay $1,000.00 by Chief Judge Phillips on March 4, 2020, and was sanctioned and ordered to pay $500.00 by Judge Smith on July 20, 2020. However, the respondent filed with the United States District Court for the Western District of Missouri a 'Notice of Noncompliance with Illegal and Criminal Order Purporting to Impose Criminal Penalties' on April 1, 2020, after Chief Judge Phillips' sanction order was issued. There was no evidence presented that the respondent paid the $1,000.00 or the $500.00 sanction. Further, the respondent was disbarred for his misconduct from practicing in the Eighth Circuit Court of Appeals on November 2, 2021.

"251. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

'6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding.

'7.1 Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.'

54

"252.    The disciplinary administrator recommended that the respondent be disbarred.

"253.    The respondent recommended that he not be disciplined because he believed there was no evidence indicating that he violated the Kansas Rules of Professional Conduct.

"*Discussion*

"254.    On October 26, 2021, in its 'Response to Respondent's Constitutional Claims', the disciplinary administrator's office asked the panel to find that the First Amendment does not prohibit a finding of misconduct here and that this disciplinary process does not violate the respondent's due process rights. The respondent filed both versions of his response on November 29, 2021, arguing that the disciplinary administrator's office was violating his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

"255.    On December 13, 2021, the hearing panel issued an order wherein it declined to make any findings or conclusions of law on this issue prior to issuing the final hearing report. See Rule 226(a)(1) (2022 Kan. Ct. R. at 281) ('the hearing panel will issue a final hearing report setting forth findings of fact, conclusions of law, aggravating and mitigating factors, and a recommendation of discipline or that no discipline be imposed . . . [f]ollowing a hearing on a formal complaint').

"256.    Now that the formal hearing in this matter has concluded, the hearing panel concludes as a matter of law that the respondent's constitutional rights have not been violated by this disciplinary proceeding.

"257.    Applying the authorities and reasoning discussed in the section discussing KRPC 8.2(a) above, the hearing panel concludes that the respondent's First Amendment rights have not been violated. See *Gentile v. State Bar of Nevada*, 501

55

U.S.1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991); *In re Comfort*, 284 Kan. 183, 159 P.3d 1011 (2007); *In re Pyle*, 283 Kan. 807, 156 P.3d 1231 (2007); *In re Landrith*, 280 Kan. 619, 124 P.3d 467 (2005); *State v. Nelson*, 210 Kan. 637, 504 P.2d 211 (1972).

"258.     Further, the hearing panel concludes that the respondent's rights under the Fifth and Fourteenth Amendments have not been violated in this disciplinary proceeding.

"259.     In an attorney disciplinary proceeding, a respondent 'is entitled to procedural due process, and that due process includes fair notice of the charges sufficient to inform and provide a meaningful opportunity for explanation and defense.' *In re Knox*, 309 Kan. 167,170, 432 P.3d 654 (2019) citing *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).

"260.     The respondent was served with a copy of the formal complaint in this matter, presented and argued multiple motions and responses to motions wherein he thoroughly briefed his arguments, and was provided the opportunity to present evidence on his own behalf, although he elected not to.

"261.     The respondent invoked the Fifth Amendment privilege against self-incrimination during his testimony where he believed a question may elicit a response that could place him in criminal jeopardy. The hearing panel ruled that the Fifth Amendment was not properly invoked where the respondent was asked about a statement he had previously made to the investigator in this disciplinary matter, because the respondent had waived the privilege. However, the hearing panel affirmed the respondent's right to invoke the Fifth Amendment privilege when it had not been previously waived by him.

"262.     The hearing panel concludes that this disciplinary proceeding complies with due process requirements and does not violate any of the respondent's constitutional rights.

"263.    Finally, the hearing panel took under advisement the disciplinary administrator's motion during the formal hearing to accept Exhibits 24 through 29, 39, 40, and 41 to prove the truth of the matter asserted. The hearing panel previously admitted these exhibits via its order dated December 13, 2021, pursuant to hearsay exception K.S.A. 60-460(o) 'to prove the content of the record.'

"264.    During the formal hearing, the disciplinary administrator's office again asked that the hearing panel admit the exhibits for all purposes, including to prove the truth of the matter asserted. The disciplinary administrator's office cited *State v. Baker*, 237 Kan. 54, 697 P.2d 1267 (1985), to support its argument that a properly certified copy of a court record is grounds to admit the record under the K.S.A. 60-460(o) hearsay exception.

"265.    The hearing panel agrees that the exhibits, which are properly certified by the custodians of those court records, are admissible under K.S.A. 60-460(o). But K.S.A. 60-460(o) limits the use of those records under the exception 'to prove the content of the record.' In *Baker*, the Supreme Court upheld admission of a journal entry of judgment from another district court to prove that the defendant had a prior felony conviction. *Baker*, 237 Kan. at 55. The Court applied K.S.A. 60-460(o) similarly in *City of Overland Park v. Rice*, 222 Kan. 693, 567 P.2d 1382 (1977), where the Court upheld admission of a prior order of driver's license suspension under K.S.A. 60-460(o) as evidence of the period of suspension for a subsequent prosecution for driving on a suspended license. In both of these cases, the court records were admitted 'to prove the content of the record' or in other words, to prove that the prior conviction or suspension happened and when it happened. These records were not admitted through K.S.A. 60-460(o) to prove the truth of the matter asserted in any statements made within those documents.

"266.    The disciplinary administrator's office did not call any witnesses or provide any further evidentiary foundation during the formal hearing to support admitting these exhibits for any other purpose.

"267. Based on the plain language of K.S.A. 60-460(o) and based on the manner in which the Kansas Supreme Court has applied K.S.A. 60-460(o) to court records previously, the hearing panel concludes that Exhibits 24 through 29, 39, 40, and 41 were properly admitted 'to prove the content of the record,' and the panel considers them only for that purpose.

"268. The hearing panel notes, however, that a prior judgment or ruling of a court that is 'verbal parts of an act' determining the rights or obligations of the parties 'merely to show the fact of its having been made' is not hearsay and may be considered for this non-hearsay use. *Baldridge v. State*, 289 Kan. 618,215 P.3d 585 (2009); *State v. Oliphant*, 210 Kan. 451, 454, 502 P.2d 626 (1972); see also *U.S. v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004). Further, a court shall take judicial notice of 'such facts at the request of a party if the party furnishes the court with sufficient information to comply with the request and has given the adverse party notice and an opportunity to respond,' such as whether a particular order has been entered. *Matter of Starosta*, 314 Kan. 378, 499 P.3d 458, 466 (2021).

"269. The hearing panel took documents that are certified court orders within these exhibits into consideration in a manner consistent with this analysis.

"*Recommendation of the Hearing Panel*

"270. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be disbarred.

"271. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## OBJECTION TO RESPONDENT'S RULE 6.09 LETTER

Just seven days before oral argument, Jordan filed a letter of additional authority, presumably under Kansas Supreme Court Rule 6.09 (2022 Kan. S. Ct. R. at 40), although he did not reference that rule as authority for his submission. This letter asserts that in a minute order, dated September 1, 2022, "Judge Contreras repeatedly confirmed that he lied about Powers' email." The Disciplinary Administrator objects to Jordan's letter because it violates Rule 6.09, which prohibits submitting additional authority less than 14 days before oral argument. It also notes that even if the timing is overlooked, Jordan inaccurately characterizes the minute order's content.

The only exception to the Rule 6.09 deadline is to address additional authority published or filed less than 14 days before oral argument. This exception does not apply. We sustain the objection.

## RESPONDENT'S MOTION TO COMPEL

Three days before oral argument, Jordan filed a "Respondent's Motion to Compel (And Renewed Request For) Release of Hearing Recordings." He asks this court to either release or order the Kansas Board for Discipline of Attorneys to provide him with a copy of each audio or video recording made during the panel's evidentiary hearing on January 12, 2022. He claims entitlement under the Kansas Open Records Act, K.S.A. 45-215 et seq. He asserts he repeatedly requested these copies, and that representatives of the Board and the Disciplinary Administrator's office denied production. He declares these representatives have engaged in "criminal misconduct." The Disciplinary Administrator's office filed a response asking us to deny the motion.

We agree with the Disciplinary Administrator's office. Jordan's motion has at least two fatal flaws. First, to the extent it seeks relief under KORA, Jordan is in the wrong

court. KORA provides procedures for pursuing such claims with a district court. See K.S.A. 45-222(a) ("The district court of any county in which public records are located shall have jurisdiction to enforce the purposes of this act with respect to such records, by injunction, mandamus, declaratory judgment or other appropriate order, in an action brought by any person."). Second, K.S.A. 45-218(a) expressly requires a records custodian to allow inspection of recordings and to make "suitable facilities" available for that purpose. But KORA does not obligate reproduction. K.S.A. 45-219(a) makes that point clear by providing:

> "A public agency shall not be required to provide copies of radio or recording tapes or discs, video tapes or films, pictures, slides, graphics, illustrations or similar audio or visual items or devices, unless such items or devices were shown or played to a public meeting of the governing body thereof."

We deny the motion.

## DISCUSSION

Jordan was given adequate notice of the formal complaint and he filed an answer. He was also given adequate notice of the hearings before the panel and this court. He appeared at both proceedings.

In a disciplinary proceeding, the court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations occurred and, if they did, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. Kansas Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281); *In re Huffman*, 315 Kan. 641, 674, 509 P.3d 1253 (2022). Clear and

convincing evidence is that which causes a fact-finder to believe it is highly probable that the facts asserted are true. *Huffman*, 315 Kan. at 674.

A finding is considered admitted if exception is not taken. When exception is taken, the finding is typically not deemed admitted so the court must determine whether it is supported by clear and convincing evidence. If so, the finding will not be disturbed. The court does not reweigh conflicting evidence, reassess witness credibility, or redetermine questions of fact when undertaking its factual analysis. 315 Kan. at 674.

Jordan filed exceptions to the panel's final hearing report, contending it "is so lacking in findings of actual facts and conclusions of actual law as to be worthless except as evidence that Panel attorneys lied and committed crimes . . . ." The headings contained in Jordan's filing designate exceptions to the following paragraphs of the final hearing report:  17; 42; 51; 63-65; 70-71; 73-86; 88-97; 99-101; 103-104; 106-107; 112; 122-128; 130-141; 143-170; 172-185; 188-191; 194-225; 227-236; 238-240; 242-247; 249-250; 252-253; 256-258; 261-265; and 270.

The Disciplinary Administrator points out Jordan's exceptions encompass 59 of the panel's 98 factual findings, and 90 of the panel's 96 conclusions of law. It also contends Jordan "failed to brief most of the exceptions taken." But the Disciplinary Administrator does not identify those abandoned exceptions.

The Disciplinary Administrator further argues Jordan's brief fails to comply with Kansas Supreme Court Rule 6.02(a)(4)-(5) (2022 Kan. S. Ct. R. at 35). Regarding Rule 6.02(a)(4), it contends that within Jordan's brief, "many" of his factual assertions are not keyed to the record. It believes these un-keyed assertions should be presumed to lack support. Regarding Rule 6.02(a)(5), the Disciplinary Administrator contends Jordan failed to meet the rule's requirement that each issue begin with a pinpoint citation to the

record where the issue was raised and ruled upon. It does not suggest a remedy for this violation. More specifically, the Disciplinary Administrator contends Jordan's argument concerning the Kansas Public Speech Protection Act should be deemed waived because it was not presented to the hearing panel.

Jordan responds to the un-briefed exceptions and Rule 6.02 arguments only by claiming "[w]aiver must" also "be applied against the ODA because this Court must ensure the ODA afforded Jordan due process of such law and equal protection under such law." He argues the Disciplinary Administrator "failed to demonstrate that any court could punish" his conduct; "failed to state any fact or legal authority that could counter any fact or legal authority" he presented; and failed to address the authorities he relies on.

With these claims in mind, "[a] respondent must advance arguments in their brief to support any exceptions, or they are deemed waived or abandoned. . . . The brief must also support the exceptions with appropriate record citations." *Huffman*, 315 Kan. at 675. Jordan's opening brief designates four issues, but they all seek mainly to establish a claim that imposing any discipline here violates his First Amendment rights as applied to the states through the Fourteenth Amendment of the United States Constitution.

To the extent Jordan's factual contentions touch on the panel's findings on specific rule violations, we address them as applicable to each violation found.

*Application of the First Amendment*

Jordan's first issue asserts the admittedly uncontroversial proposition that discipline must not be imposed in violation of the First Amendment. See *Peel v. Attorney Registration and Disciplinary Com'n of Illinois*, 496 U.S. 91, 110 S. Ct. 2281, 110 L. Ed. 2d 83 (1990) (reversing judgment imposing discipline on attorney for violation of rule

prohibiting holding oneself out as a specialist, because imposition of discipline for violating the rule violated the First Amendment). His brief then attempts to demonstrate the constitutional violations he asserts.

Jordan's second and third issues broadly challenge what he views as the restrictions on his right to petition the government and content-based regulations on speech imposed by the KRPC provisions at issue. He also contends discipline may not be imposed for his statements because the Disciplinary Administrator, in his view, fails to demonstrate his assertions about judges lying and committing crimes were false. More specifically, he contends Federal Rule of Civil Procedure 11, which was the basis for Chief Judge Phillips' contempt order, and the KRPC provisions the hearing panel found he violated, must withstand strict scrutiny because they are content-based regulations on speech as applied to him. And by citing caselaw governing civil libel and criminal defamation cases involving critique of public officials, he argues the falsity of his claims must be shown to impose discipline. In doing so, he relies on *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990), *Garrison v. Louisiana*, 379 U.S. 64, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964), and *New York Times v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). Extending this argument, Jordan's fourth issue says he was criticizing the judges in their official capacity, so he cannot be held accountable for what he asserts was merely libeling the government.

Taking Jordan's right-to-petition contention first, we can quickly dispense with it. "Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition. [Citations omitted.]" *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). Any discipline imposed here is premised on Jordan's baseless assertion of frivolous factual issues while litigating his FOIA cases in federal court. The right to petition does not shield him from discipline.

Similarly, his strict scrutiny argument misconstrues the scope of his First Amendment rights. All the misconduct here arises from his assertions made in court filings or from the fact of the filings themselves. And a lawyer's in-court advocacy is not protected speech under the First Amendment. See *In re Hawver*, 300 Kan. 1023, 1042-45, 339 P.3d 573 (2014) (holding lawyer retained no First Amendment interest in statements made to jury on behalf of client, and discipline could be imposed for statements' failure to meet standard of competence required by KRPC 1.1). This includes advocacy in motions filed in a court proceeding. See *Mezibov v. Allen*, 411 F.3d 712, 720 (6th Cir. 2005) ("[I]n filing motions and advocating for his client in court, Mezibov was not engaged in free expression; he was simply doing his job. In that narrow capacity, he voluntarily accepted almost unconditional restraints on his personal speech rights, since his sole raison d'etre was to vindicate his client's rights.").

Jordan claims his freedom of speech is "no less" just because he has a law license, citing equal protection and due process principles. But "[t]he courtroom is a nonpublic forum . . . where the First Amendment rights of everyone (attorneys included) are at their constitutional nadir. In fact, the courtroom is unique even among nonpublic fora because within its confines [courts] regularly countenance the application of even viewpoint-discriminatory restrictions on speech." *Mezibov*, 411 F.3d at 718. "The government 'is permitted to set reasonable subject-matter limitations, except in public forums that are opened to all speech by tradition or government decree.'" *Three categories of forums and nonforums—Traditional public forums—Content-based regulation*, 1 Smolla & Nimmer on Freedom of Speech § 8:5.

As we previously held,

"An attorney's speech is limited both in and outside the courtroom. See *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071, 111 S. Ct. 2720, 115 L.Ed.2d 888 (1991) (opinion of Rehnquist, C.J.). 'It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to "free speech" an attorney has is extremely circumscribed.' 501 U.S. at 1071. And even a lawyer's out-of-court advocacy may be subject to limitation when it conflicts with ethics rules that serve substantial government interests, such as guaranteeing criminal defendants' rights to fair trials, or protecting public confidence in the legal system. See 501 U.S. at 1071 (government interest in preserving right to fair trial prevailed over attorney's First Amendment interest in statements to press substantially likely to affect trial's outcome or prejudice [venire] panel); *In re Landrith*, 280 Kan. 619, 638-39, 124 P.3d 467 (2005) (First Amendment not defense to discipline for attorney's false and inflammatory accusations in pleadings filed with the court against judges, attorneys, court staff, and others)." *Hawver*, 300 Kan. at 1042-43.

Jordan's attempt to apply First Amendment standards applicable in libel cases to his conduct is also misplaced. He cites United States Supreme Court caselaw regarding the standards for imposing civil liability and criminal penalties for criticism of public officials. See *Milkovich*, 497 U.S. 1; *Garrison*, 379 U.S. 64; *New York Times*, 376 U.S. 254. But the "[t]he *New York Times* standard of 'actual malice' in a civil action for libel is not appropriate in a proceeding to discipline an attorney." *In re Johnson*, 240 Kan. 334, 340, 729 P.2d 1175 (1986).

Again, we have previously explained:

"Other jurisdictions have recognized that, unlike a layman, a bar member's right to free speech may be regulated. In *State ex rel. Nebraska State Bar Assn. v. Michaelis,* 210 Neb. 545, 316 N.W.2d 46 (1982), an attorney had placed a newspaper advertisement which listed several factual charges of misconduct, illegal acts, and other violations of the

65

law, which he knew or should have known to be false, by the then incumbent county attorney, the city attorney, and several other attorneys practicing in the region. The court stated that '[a] lawyer belongs to a profession with inherited standards of propriety and honor, which experience has shown necessary in a calling dedicated to the accomplishment of justice . . . . "A layman may, perhaps, pursue his theories of free speech or political activities until he runs afoul of the penalties of libel or slander, or into some infraction of our statutory law. *A member of the bar can, and will, be stopped at the point where he infringes our Canons of Ethics;* and if he wishes to remain a member of the bar he will conduct himself in accordance therewith."' 210 Neb. at 556-58.

"Upon admission to the bar of this state, attorneys assume certain duties as officers of the court. Among the duties imposed upon attorneys is the duty to maintain the respect due to the courts of justice and to judicial officers." *Johnson*, 240 Kan. at 336-37.

For these reasons, the First Amendment does not shield Jordan from discipline for his motion practice that asserted frivolous factual claims as the basis for requesting relief from court orders, KRPC 3.1; knowingly violated court rules and orders, KRPC 3.4(c); impugned the integrity and qualifications of judges, KRPC 8.2(a); was prejudicial to the administration of justice, KRPC 8.4(d); and adversely reflected on his fitness to practice law, KRPC 8.4(g). Although Jordan argues he only sought to express what he believes to be constitutionally protected criticism of the judges at issue, he was not free to do so in a manner violating ethical limitations on his conduct in court and in his filings in court proceedings.

*Application of Supreme Court Rule 220(b)*

Jordan argues the panel erred when applying Kansas Supreme Court Rule 220(b) (2022 Kan. S. Ct. R. at 275) to admit certified court judgments as prima facie evidence of misconduct. He argues the rule violates "Kansas law and the Due Process and Equal

Protection Clauses of the Fourteenth Amendment" and the separation of powers. We disagree.

Rule 220 provides:

"(b) Judgment or Ruling. Except as otherwise provided in subsection (c), a certified copy of a judgment or ruling in any action involving substantially similar allegations as a disciplinary matter is prima facie evidence of the commission of the conduct that formed the basis of the judgment or ruling, regardless of whether the respondent is a party in the action. The respondent has the burden to disprove the findings made in the judgment or ruling.

"(c) Judgment or Ruling Based on Clear and Convincing Evidence. For the purpose of a disciplinary board proceeding, a certified copy of a judgment or ruling described in subsection (b) that is based on clear and convincing evidence is conclusive evidence of the commission of the conduct that formed the basis of the judgment or ruling. The respondent may not present evidence that the respondent did not commit the conduct that formed the basis of the judgment or ruling."

Jordan's due process, equal protection, and "Kansas law" arguments appear rooted in his perception that Rule 220 conflicts with K.S.A. 60-460(o)(1), which permits certified official records to be admitted only to prove their contents. Application of Rule 220(b), he contends, deprived him of the opportunity to confront "any witnesses against him."

The certified records the panel relied on establish that the federal courts made the factual findings and legal rulings contained within them. Rule 220(b) and (c) operate similarly to the commonplace doctrine of collateral estoppel, which prevents relitigation of previously determined issues. See *Venters v. Sellers*, 293 Kan. 87, 98, 261 P.3d 538 (2011) (collateral estoppel prevents parties from attacking prior adjudication when a prior

judgment on the merits determined the parties' rights and liabilities; collateral estoppel applies when the parties are the same or in privity and the issue litigated is both determined and necessary to support the judgment). Although the Disciplinary Administrator is not a party to the prior actions, "[n]onmutual offensive collateral estoppel, a form of issue preclusion, 'preclude[s] a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff.'" *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79 (2d Cir. 2019).

Chief Judge Phillips found Jordan made frivolous factual assertions with no reasonable basis in fact about Judge Smith in his filings. Jordan had an opportunity to litigate this issue in the contempt proceedings before Chief Judge Phillips. And Rule 220(b) afforded Jordan the opportunity to supply evidence to the panel tending to show a factual basis for his claims that Judge Smith lied, committed crimes, or conspired with any other person to unlawfully deny Jordan access to the e-mail. He declined to do so.

Jordan also argues Rule 220 violates separation of powers, citing *Jones v. Continental Can Co.*, 260 Kan. 547, 920 P.2d 939 (1996). But *Jones* is distinguishable. It held a Supreme Court rule concerning time-limit computation could not be applied to expand the statutory time to take an appeal in a workers compensation case. The *Jones* court reasoned it could not expand its own jurisdiction by court rule. It explained the court's rulemaking power is limited to "rules necessary to implement the court's constitutional and statutory authority and does not include the power to expand that authority." 260 Kan. at 558. The holding and rationale in *Jones* have no bearing on the court's authority to make and enforce Rule 220.

Our court's appellate jurisdiction is limited to that provided by law. Kan. Const. art. 3, § 3. By contrast, "[t]he power to regulate the bar, including the power to discipline its members, rests inherently and exclusively with" this court. *State ex rel. Stephan v.*

*Smith*, 242 Kan. 336, 371, 747 P.2d 816 (1987). "The matters of contempt or discipline are left exclusively for the courts." 242 Kan. at 371.

We hold the panel properly applied Rule 220.

*Clear and convincing evidence supports the panel's rules violation findings.*

Jordan does not argue insufficient evidence to support the panel's misconduct findings as a separately designated issue. Instead, he attacks these findings on the grounds that "[n]o one even contended, much less attempted to show, that any statement by Jordan was false regarding any fact or that it in any way adversely affected the administration of justice." We hold that clear and convincing evidence supports each rule violation the panel found.

KRPC 3.1 provides that a lawyer may not "assert or controvert an issue" in a proceeding "unless there is a basis for doing so that is not frivolous." In the Missouri federal court actions, Jordan asserted Judge Smith lied about the law and contents of the Powers e-mail, committed crimes, and more generally was a "traitor to the judiciary and an enemy of the Constitution" in seeking relief from Judge Smith's orders denying him and his clients access to the Powers e-mail and staying the case pending appeal. Chief Judge Phillips' contempt order found Jordan failed to establish a factual basis for these claims or a likelihood that such basis could be developed. The order also found the accusations lacked a reasonable basis in fact. These findings established the contentions were frivolous, and Jordan failed to adduce evidence at the panel hearing to rebut the presumption.

Under KRPC 3.4(c) (2022 Kan. S. Ct. R. at 395), it is misconduct to "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an

assertion that no valid obligation exists." This includes violation of court orders. See *In re Hult*, 307 Kan. 479, 493, 410 P.3d 879 (2018) (attorney violated KRPC 3.4[c] by failing to appear on an order to show cause and by failing to produce information required by a subpoena).

Chief Judge Phillips' order establishes a rebuttable presumption that Jordan violated FRCP 11. Similarly, Judge Smith's July 20, 2020, order—sanctioning Jordan "'[f]or his repeated violations of [the] Court's Orders, including but not limited to the Court's Orders prohibiting Plaintiff's counsel from emailing Chambers staff and Clerk's Office staff'"—establishes a rebuttable presumption these transgressions occurred. And once again, Jordan did not come forward at the panel hearing with evidence to rebut these presumptions. He simply asserts he openly refused to comply with the contempt order, which alludes to the defense stated in KRPC 3.4. But nothing in the record establishes an open-refusal defense to this misconduct, so the panel's conclusion Jordan violated KRPC 3.4 remains clear.

Finally, KRPC 8.4(d) (2022 Kan. S. Ct. R. at 434) prohibits "conduct that is prejudicial to the administration of justice." Though not specifically directed at the panel's KRPC 8.4(d) findings, Jordan contends "[n]o evidence or testimony established that any Jordan statement or court filing caused any quantifiable harm, injury or prejudice to the administration of justice or the rule of law." But we previously held that "[c]onduct requiring a court to unnecessarily consider frivolous issues obviously delays the proceedings and causes the lawyers' clients to incur unnecessary legal fees and other expenses. Such conduct can support finding that the lawyer violated KRPC 8.4(d)." *Huffman*, 315 Kan. at 683.

In addition, KRPC 8.4(g) "relates to fitness and may be violated in cases where other disciplinary rules are also violated. The specific violations charged and found by

70

the evidence may adversely reflect on the lawyer's fitness to practice law." *In re Carson*, 268 Kan. 134, 138, 991 P.2d 896 (1999). And this court has recognized that criminal offenses "involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice" indicate a "lack of those characteristics relevant to law practice." *In re Hodge*, 307 Kan. 170, 229, 407 P.3d 613 (2017) (quoting KRPC 8.4, cmt. 2 [2017 Kan. S. Ct. R. 380]).

Here, the record shows Jordan repeatedly filed motions with frivolous assertions of dishonest and criminal conduct against judges and opposing counsel who denied Jordan access to the Powers e-mail. The hearing panel found this conduct "served no legitimate purpose other than to insult and harass the judges." The evidence further shows multiple courts, including the Western District Court of Missouri and the Eighth Circuit Court of Appeals, wasted judicial resources when considering and ruling on these motions and Jordan's meritless attacks on those rulings. In addition, each frivolous pleading contained statements impugning the integrity of the judges in whose courts they were filed. Moreover, the misconduct underlying these offenses implies dishonesty, while its repetitive nature, done with intent to badger judges into disclosing privileged documents, suggests thoughtful interference with the administration of justice.

We hold that clear and convincing evidence establishes Jordan violated KRPC 8.4(d) and (g).

Moving to the KRPC 8.2(a) violation, Jordan argues the Disciplinary Administrator failed to prove "any assertion by Jordan was false." KRPC 8.2(a) (2022 Kan. S. Ct. R. at 432) provides:

> "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a

judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

The rule's plain language prohibits either a false statement or one made with reckless disregard for the statement's truth. And in *In re Arnold*, 274 Kan. 761, 56 P.3d 259 (2002), the court upheld the imposition of discipline for a violation of KRPC 8.2(a) against a First Amendment challenge when the attorney wrote a letter to a judge stating "'[y]ou simply don't have what is required to decide the kind of issues that you were presented with in this case'" and "'[y]our absurdly fastidious insistence on decorum and demeanor mask an underlying incompetence.'" 274 Kan. at 765. The court reasoned,

> "In this case, Arnold's behavior shows a complete lack of respect toward the judiciary. His style was sarcastic, insulting, and threatening and subjected him to the discipline that was entered. The remedy for a believed erroneous trial court ruling is appeal, not an intemperate writing faxed to the judge shortly after the ruling was made." 274 Kan. at 773.

Jordan made numerous accusations of lying "about the law" and the contents of the Powers e-mail; criminal concealment of evidence; and conspiracy to conceal evidence. He aimed these accusations at judges before whom he appeared, attorneys opposing his bids to obtain the Powers e-mail, the disciplinary panel, and the Disciplinary Administrator's office. The outlandish nature, abusive tone, frequency, and breadth of these accusations, and their seemingly indiscriminate application to anyone who opposes Jordan—including the Disciplinary Administrator and the hearing panel—render them incredible on their face.

The hearing panel found Jordan's statements violated KRPC 8.2(a), explaining that his accusations were "at the very least, made with reckless disregard for the truth or falsity of the qualifications or integrity of Judge Smith, Chief Judge Phillips, and the [8th

72

Circuit] panel judges." In doing so, the hearing panel determined the Disciplinary Administrator was not required to prove Jordan's statements were false. Applying Supreme Court Rule 220(b), the panel concluded Jordan violated KRPC 8.2(a) based both on Chief Judge Phillips' finding that Jordan made "baseless allegations" that "he knew were false or, at least, he acted with reckless disregard to their truth or falsity," and Jordan's failure to disprove the finding at the disciplinary hearing. And based on his disregard of the rule, the panel concluded he violated KRPC 8.2(a) because he had never read an unredacted version of the Powers e-mail, so his assertions that "these judges lied about Powers' email, concealed evidence, and committed crimes" had to have been made with reckless disregard to their truth or falsity.

In arguing clear and convincing evidence supported the panel's KRPC 8.2(a) finding, the Disciplinary Administrator points out that "[t]hroughout the disciplinary process" Jordan "'failed to provide even "one scintilla of proof of such wrongdoing, through exhibits, witnesses, or his own testimony."'" (Quoting *In re Landrith*, 280 Kan. 619, 639, 124 P.3d 467 [2005].) It also points out Chief Judge Phillips found respondent violated Missouri rule 4-8.2, which the panel viewed as mirroring the language of KRPC 8.2(a), and so the burden shifted to Jordan to disprove that finding under Rule 220.

We hold that clear and convincing evidence establishes a KRPC 8.2(a) violation. Unlike the respondent in *In re Pyle*, 283 Kan. 807, 156 P.3d 1231 (2007), Jordan did not offer evidence tending to show any factual basis for his allegations. They rest instead on his mere supposition that the Powers e-mail is not subject to attorney-client privilege, which is contrary to multiple courts' rulings. He failed to come forward with evidence to support the claims when confronted with Judge Smith's show cause order, culminating in Chief Judge Phillips' ruling that the claims were baseless and made with at least reckless disregard for their falsity. And Jordan refuses to even confirm or deny that he has ever seen the e-mail. Worse yet, in one instance, Jordan twisted Judge Smith's recognition of

73

judicial authority and discretion into a "blatantly deceitful declaration[] of his intent to defraud" and "openly declar[ing] his intent to decide this case fraudulently." Indeed, this statement by itself can be considered false on its face.

Unlike the respondents in both *Pyle* and *In re Huffman*, 315 Kan. 641, 509 P.3d 1253 (2022), Jordan did not offer the panel a plausible interpretation under which his assertions may fall within the realm of legitimate criticism. He repeatedly made what he represented as concrete factual allegations that judges lied and committed various specific federal crimes, and he did so with reckless disregard for the statements' truth or falsity. Cf. *In re Eckelman*, 282 Kan. 415, 422, 144 P.3d 713 (2006) (holding attorney crossed line of justified criticism by accusing judge of improper communication with jurors with reckless disregard for assertion's falsity).

Consistent with this court's caselaw applying KRPC 8.2(a), we hold the evidence supports a finding that Jordan violated KRPC 8.2(a).

APPROPRIATE DISCIPLINE

The remaining question is the appropriate discipline.

"In any given case, this court is not bound by the recommendations from the hearing panel or the Disciplinary Administrator. 'Each disciplinary sanction is based on the specific facts and circumstances of the violations and the aggravating and mitigating circumstances presented in the case.' 'Because each case is unique, past sanctions provide little guidance.' [Citations omitted.]" *Hodge*, 307 Kan. at 230.

The court generally looks to the American Bar Association Standards for Imposing Lawyer Sanctions to aid in determining discipline. That framework considers "four factors in determining punishment:  (1) the ethical duty violated by the lawyer; (2)

74

the lawyer's mental state; (3) the actual or potential injury resulting from the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors." 307 Kan. at 231.

The Panel found Jordan intentionally violated his duty to the legal system and legal profession and, in doing so, caused actual injury to both. It additionally found his misconduct was aggravated by the facts that he had substantial experience in the practice of law; engaged in a pattern of misconduct comprising multiple KRPC violations; refused to acknowledge the wrongful nature of his conduct; engaged in bad-faith tactics during the disciplinary process; and engaged in deceptive practices during the disciplinary process. When the panel referenced his contempt sanctions and 8th Circuit disbarment as other penalties for his misconduct, it noted there was no evidence the contempt sanctions were paid. It recommends disbarment. Before this court, the Disciplinary Administrator agrees.

We hold disbarment is the appropriate discipline. We base this determination on ABA Standards 6.12 (suspension appropriate when false statements knowingly submitted to court, causing potential injury to party or legal proceeding, or potentially adverse effect on legal proceeding); 6.22 (suspension appropriate when knowing violation of court order or rule causes potential injury to client or party, or potential interference with legal proceeding); and 7.2 (suspension appropriate with knowing conduct violating duty owed as a professional causes injury or potential injury to a client, the public, or the legal system). Adding to our consideration are the aggravating and mitigating factors found by the panel that we hold are supported by clear and convincing evidence.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Jack R.T. Jordan be and he is hereby disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Kansas Supreme Court Rule 225(a)(1) (2022 Kan. S. Ct. R. at 281).

IT IS FURTHER ORDERED that the Office of Judicial Administration strike the name of Jack R.T. Jordan from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that Jordan comply with Kansas Supreme Court Rule 231 (2022 Kan. S. Ct. R. at 292).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.